AL JOHNSON CONSTRUCTION CO. ET AL., APPELLANTS, *v.*
KOSYDAR, TAX COMMR., APPELLEE. (2 cases)
MASSMAN CONSTRUCTION CO. ET AL., APPELLANTS, *v.* KOSYDAR,
TAX COMMR., APPELLEE. (2 cases)

[Cite as Al Johnson Const. Co. v. Kosydar (1975),
42 Ohio St. 2d 29.]

30

(Nos. 74-428, 74-429, 74-430 and 74-431—
Decided April 2, 1975.)

*Messrs. Schottenstein, Garel, Swedlow & Zox, Mr. Jay R. Dingledy* and *Mr. Harvey Dunn,* for appellants.

*Mr. William J. Brown,* attorney general, and *Mrs. Maryann B. Gall,* for appellee.

I.

CELEBREZZE, J. The Tax Commissioner assessed the sales and use taxes in question in these cases to each of the individual joint venturers. Appellants argue that since the joint ventures were the consumers liable pursuant to R. C. 5739.13 ("* * * the commissioner may make assessment against either the vendor or the consumer"), only the joint ventures could properly be assessed.

Without entering into an extended discussion of the definitions involved in the applicable chapters of the Revised Code (5739 and 5741), it is clear that the joint ventures were the consumers.

While admitting that the joint ventures are ultimately liable for the tax assessed, appellants argue that the Tax Commissioner has no *power* to assess the tax against the individual venturers.

Appellants cite *Mannen & Roth Co.* v. *Peck* (1954), 161 Ohio St. 153, to support the distinction which they make between liability for tax and the Tax Commissioner's power to assess that tax. But the import of *Mannen* was only that until liability was established, the Tax Commissioner had no power to assess a tax.

Here, examination of the law relating to joint ventures establishes the liability of the joint ventures.

In *Ford* v. *McCue* (1955), 163 Ohio St. 498, the court, in paragraph one of the syllabus, defined a joint venture as:

"* * * [A]n association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers * * *."

It has been the practice of this court, and indeed the practice of most courts, to apply to joint ventures the law which has developed concerning partnerships. See, generally, 31 Ohio Jurisprudence 2d 317, Joint Adventures; 46 American Jurisprudence 2d 19, Joint Ventures.

The tax liability arose from activities within the scope of the joint ventures so that each of the venturers is jointly liable for the debt arising from that activity, and jointly and severally liable for the penalties, just as a partner would be. See R. C. 1775.14(A) and (B)—partner liability.

Also, the joint venture agreements make the parties jointly and severally liable for the obligation of the joint ventures.

However, the formal question whether the proper party was assessed remains. We find no merit in appellants' argument. R. C. 5739.01 defines "person" to include

"joint ventures * * * corporations." As a practical matter, the individual corporations were the joint ventures, and by the time the Tax Commissioner made his assessment the joint ventures had ceased to exist since their purpose had been served when the respective projects were completed.

There was no confusion as to what assesments were being made, and the individual corporations challenged the assessments before the Tax Commissioner. To say, as appellants argue, that their challenge of the assessments before the Tax Commissioner in no way admitted that the joint venturers were the proper parties assessed, avoids the practical ramifications of those challenges.

The final entries of the Tax Commissioner do not discuss this procedural issue. The first complaint that the form of the assessments was incorrect is found in the notices of appeal to the Board of Tax Appeals.

In view of the foregoing, we agree with the Board of Tax Appeals that the assessments of the individual joint venturers were proper.

## II.

In the Racine Dam project (Case Nos. 74-430 and 74-431), appellants had some doubt as to the proper boundary line between West Virginia and Ohio.[3] As a result, the accounts kept on the project for use tax purposes were broken down into three categories.

The area titled "Ohio" had total equipment use charges of $431,881.58, resulting in a use tax assessment of $17,275.26; the area titled "Gray Area" had total equipment use charges of $199,078.45, resulting in a use tax assessment of $7,963.14; and the area titled "West Virginia" had total equipment use charges of $131,239.70, resulting in a use tax assessment of $5,249.59.

Despite the separate accounting procedure followed by appellants, the Tax Commissioner determined that

---

[3]The location of the boundary is usually described as "the low water mark" on the Ohio side. *Handly's Lessee* v. *Anthony* (1820), 5 Wheat. 374. The problem remains, where, as here, over the years the low water mark has changed.

"* * * no actual records were kept which could establish where or when the equipment was used. The presumption in Ohio sales and use tax statutes is that all sales (rentals) are subject to the tax until the contrary is established. * * *"

The Board of Tax Appeals decided that the records kept were adequate for separating equipment used in Ohio from that used in West Virginia. The Board of Tax Appeals made the following determination as to the location of the boundary:

"It is therefore the finding of the Board of Tax Appeals that appellants' determination of the boundary demarcation between Ohio and West Virginia as being that line and consequent area at the existing low water mark at the start of construction is correct and shall be the demarcation used by this board."

The board then gave appellants credit for the $5,249.59 assessed for West Virginia use. Appellants argue before this court that an additional amount of $7,963.14 must be credited to them, based on the location of the boundary by the Board of Tax Appeals.

We agree with that argument. A short examination of the testimony before the Board of Tax Appeals is necessary in order to explain why this result is required.

An engineer for Al Johnson Construction, the sponsor-corporation on the project, determined, from studies of several available maps, that the boundary might be in one of three different locations:

1. 1911-1914 map showing "Weaver's Bar," a sandbar which extended almost to the middle of the river.

2. 1958 map line in which "Weaver's Bar" is no longer shown, having been submerged or dredged out.

3. 1967 normal pool—The Army Corps of Engineers dredged the river prior to the start of construction of the dam, causing a widening of the river.

Appellants considered that portion of the river between the former location of "Weaver's Bar" and the West Virginia shore as being definitely in West Virginia. The "Weaver's Bar" line fell between piers 4 and 5 of the

dam as it was constructed. The area of use was denominated "West Virginia" on the account sheet. The allocation of equipment use charges for that area resulted in a use tax assessment of $5,249.59.

Appellants considered the area from the "Weaver's Bar" line to the 1958 shore, or Gallipolis normal pool, to be a "Gray Area" on the account sheet. The 1958 line, between piers 7 and 8 of the dam, was the shore line prior to the dredging at the start of construction done by the Corps of Engineers. The allocation of equipment use charges for that area resulted in a use tax assessment of $7,963.14.

From the foregoing, it is clear that the Board of Tax Appeals did not properly apply its determination of the boundary as the "existing low water mark at the start of construction" to the uncontroverted evidence presented by appellants' account sheet. Its determination is therefore unreasonable and must be modified to the extent that the assessment of $7,963.14 for the area titled "Gray Area" in appellants' account was erroneous. See R. C. 5717.04 and *Clark* v. *Glander* (1949), 151 Ohio St. 229.

### III.

Appellants in the Racine Dam cases raise several arguments to support their contention that the materials used to build the stage-one-cofferdam on the project should be excepted from taxation. The cofferdam was built pursuant to a subcontract between the joint venture and Dravo. Those materials were considered subject to use tax assessment by the Tax Commissioner and the Board of Tax Appeals.

Appellants argue, first, that R. C. 5739.02(B)(13) applies to provide the exception.[4] R. C. 5739.02 provides:
"* * *

---

[4] The exception in R. C. 5739.02(B)(13) would apply to the use tax assessment by reason of R. C. 5741.02 which, in pertinent part, provides:

"(C) The [use] tax does not apply to * * *:

"* * *

"(2) Tangible personal property, the acquisition of which, if made in Ohio, would be a sale not subject to the tax imposed by Sections 5739.01 to 5739.31, inclusive, of the Revised Code * * *."

"(B) The [sales] tax does not apply to the following:
"* * *

"(13) Building and construction materials sold to construction contractors for *incorporation into a structure or improvement to real property under a construction contract* * * * with the United States government or any of its agencies, [or] building and construction materials sold to construction contractors for incorporation into a structure or *improvement to real property* which are accepted for ownership * * * by the United States government or any of its agencies at the time of completion of such structures or improvements * * *." (Emphasis added.)

Appellants argue that a cofferdam is a structure; that it was constructed under a construction contract with an agency of the United States government; and that the building and construction materials were incorporated into the structure (cofferdam). However, we cannot agree with that interpretation of the statute.

It is the opinion of this court that the "structure or improvement to real property" referred to in the statute can only be the permanent dam itself, and the materials must be "incorporated" into *that* "structure or improvement."

Thus, we find the following language of this court, recently expressed in *Wantz Construction Co.* v. *Kosydar* (1974), 38 Ohio St. 2d 277, 278, explaining another portion of R. C. 5739.02(B)(13), is pertinent:

"* * * [Appellant] contends that that statute [R. C. 5739.02(B)(13)] does not require that such materials become a part of the completed improvement so long as their use was necessary in the construction of the improvement. * * * We reject appellant's argument that an item need not be physically affixed to an improvement to be 'incorporated' therein, as that term is used in R. C. 5739.02(B)(13). * * *"

We therefore agree with the Board of Tax Appeals that R. C. 5739.02(B)(13) does not afford appellants any exception from the use tax assessment in question.

Appellants also argue that the use tax assessment

should not be assessed against them, but, rather, should be assessed against Dravo. They argue that, pursuant to R. C. 5739.01(B), Dravo is the consumer of the materials.

R. C. 5739.01(B), in pertinent part, provides:

"(B) * * * Except as provided in Section 5739.03 of the Revised Code, a construction contract pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property is not a sale of such tangible personal property, and the construction contractor is the consumer thereof. * * *"

Generally, the position taken by the Tax Commissioner, and affirmed by the Board of Tax Appeals, is that the agreement between Dravo and the joint venture was not a construction contract but was an installment and sale-type contract shifting the burden of the tax to the joint venture as consumer.

The Tax Commissioner, in his argument before this court, relies upon the definition of "construction contract" found in his rule TX-15-01.

TX-15-01, in pertinent part, provides:

"A construction contract is any agreement, written or oral, whether on a time and material basis or lump sum basis, pursuant to which tangible personal property is or is to be incorporated into a structure or improvement to real property *so as to become a part thereof* without regard to whether it is new construction, maintenance or repair. A construction contractor is any person who performs such an agreement, whether as a prime or a subcontractor." (Emphasis added.)

That portion of the rule indicates that a degree of permanence of the improvement or structure is required in order that the agreement be a construction contract.

The Tax Commissioner is specifically given the power to adopt and promulgate rules pursuant to R. C. 5703.05(N). Absent a showing that a rule is in conflict with the statute it interprets, it will be given serious consideration by this court. Our examination of TX-15-01, as it applies to R. C.

5739.01(B), does not reveal any unreasonable or unlawful effect on that statute. Consequently, we agree with the Tax Commissioner and the Board of Tax Appeals that the contract between the joint venture and Dravo is not a construction contract, as that term is used in R. C. 5739.01(B).

Appellants argue that even if they are found to be the consumers, as we have decided, they are not liable for the tax because they paid it to Dravo as part of the contract price.

R. C. 5741.02(B) provides:

"Each consumer, storing, using, or otherwise consuming in this state tangible personal property shall be liable for the tax, and such liability shall not be extinguished until the tax has been paid to this state; provided that the consumer shall be relieved from further liability for the tax if the tax *has been paid to a seller* in accordance with Section 5741.04 of the Revised Code or prepaid by the seller in accordance with Section 5741.06 of the Revised Code." (Emphasis added.)

Appellants contend that they have complied with the provisions of R. C. 5741.02(B). As proof of that contention, they offer the subcontract agreement and a letter from the joint venture to Dravo. The letter provides that:

"* * * In this agreement all taxes for the project would be covered and we [appellants] would have no further responsibility for these."

The contract provides:

"The subcontractor [Dravo] agrees * * *:

"* * *

"XIV. To comply with all applicable federal, state and municipal laws * * * and to pay * * * all sales and use taxes * * *."

From this evidence appellants argue that they have paid the tax to the seller. We disagree. The only thing proved by the evidence in the record is that Dravo had accepted liability for taxes; there is no evidence produced by the joint venture to show that the tax, in fact, "has been paid to a seller." We agree with the Board of Tax Ap-

peals that the appellants were properly assessed the use tax.

From the foregoing, it is the opinion of this court that the decisions of the Board of Tax Appeals, as modified, are neither unreasonable nor unlawful and must be affirmed.

> *Decision affirmed in case Nos. 74-428 and 74-429. Decision modified, and affirmed as modified, in case Nos. 74-430 and 74-431.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.

