**In the Matter of Willard SLUSS and Mary Sluss, Debtors.**

**James R. WARREN, Trustee, Plaintiff,**

**v.**

**Willard SLUSS, Mary Sluss, Charles W. Warner, Jr., Marjorie Warner, et al, Defendants.**

**Bankruptcy No. 3–85–00129.
Adv. No. 3–85–0090.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Jan. 9, 1986.

---

James R. Warren, Springfield, Ohio, trustee/plaintiff.

R. Larry Schneider, Marysville, Ohio, for debtors.

Ray A. Cox, Dayton, Ohio, for defendants Charles & Marjorie Warner.

## DECISION AND ORDER

WILLIAM A. CLARK, Bankruptcy Judge.

On January 17, 1985 Willard Sluss and Mary Sluss, husband and wife, filed a petition in bankruptcy under Chapter 7 of the Bankruptcy Code. On April 26, 1985 the trustee in bankruptcy filed a complaint seeking to sell three tracts of real estate, which were listed in the Sluss' petition, free and clear of all liens and the interests of any co-owners pursuant to 11 U.S.C. § 363. Defendants Charles W. Warner, Jr. and Marjorie Warner, husband and wife, filed an answer asserting that the real estate is not property of the debtors' estate. The debtors also filed an answer, requesting the court to grant them a $10,000.00 ex-

emption in their residence, which is located on one of the tracts of real estate.

A trial was held in this matter on November 5, 1985 and post-trial memorandums of law were submitted by the trustee, the debtors, and the Warners.

## FACTS

During 1976 Mr. Sluss approached Mr. Warner with a proposal that they enter the fur business. Mr. Sluss and Mr. Warner had known each other since the 1950's, although they had not been in constant contact during the intervening years. On October 14, 1976 Mr. Sluss, Mr. Warner and another individual, James Riley, entered into an agreement (Defendant's Exhibit A) to do business as the "Ohio Fur Company." A portion of this agreement reads as follows:

It being the intent to do business as OHIO FUR COMPANY, hereinafter referred to as "COMPANY", with address at 7654 Brush Lake Road, North Lewisburg, Ohio 43060.

The term of this Agreement shall be for one (1) hunting season, from October 1, 1976 through March 31, 1977.

1. The intended purpose of the Company is to buy, prepare and sell all types of furs, traps and kindred items at a profit. Sluss and Riley shall take the lead in the above. Warner shall handle the business end of the Company, including but not limited to, advertising, promotion and contacts with New York buyers.

2. Upon signing of this Agreement by all parties, Riley and Warner shall loan $5,000.00 each and Sluss shall loan $2,000.00 to the Company. Additional amounts may be added by mutual agreement. A checking account shall be opened at Citizens National Bank, North Lewisburg, Ohio. The account shall require two (2) of any three (3) signatures for signing checks.

3. Gasoline and other reasonable expenses will be reimbursed. Mary Sluss shall keep the books and will be paid for same at the end of the season.

4. The books shall be closed March 31, 1977 and profits will be divided as follows:

A. The loans shall be repaid to Warner, Riley and Sluss in the same amounts as they loaned to the Company at Six (6%) Percent interest to each party.

B. Remaining expenses, if any, shall be paid and then the profits shall be divided equally between Warner, Sluss and Riley.

This Agreement may be terminated by any party to other parties upon a ten (10) day notice and therewith any party will be entitled to being reimbursed for loans to the Company as soon as possible. If a party terminates before the end of the hunting season, he will be entitled to loan reimbursement only and not to any share of the season profits.

AGREED TO this 14th day of October, 1976.

On October 17, 1977 a similar agreement (Defendant's Exhibit B) was entered into by Mr. Sluss, Mr. Warner and a different individual, Marvin Knott. This agreement was almost identical to the previous agreement, except that Mr. Sluss was to receive 50% of the profits, while Mr. Warner and Mr. Knott were each entitled to 25%. Shortly after the inception of the second agreement, Mr. Knott discontinued his association with the Ohio Fur Company, but the business relationship between Mr. Sluss and Mr. Warner continued. No other written agreements were entered into by Mr. Sluss and Mr. Warner.

It appears from Plaintiff's Exhibit 6 that in December of 1977, the trade name of the Ohio Fur Company was registered in the name of Willard Sluss as an individual. The trade name registration was subsequently renewed in December of 1983.

In June of 1979, Mr. Sluss and Mr. Warner decided to purchase a 61 acre farm as an investment, proposing to farm or rent the land and raise cattle. The purchase price of the farm was $46,000.00. In furnishing the down payment for the farm's

purchase, $2,349.10 was taken from a bank account of the Ohio Fur Company for Mr. and Mrs. Sluss' share and $2,349.10 was provided from the personal funds of Mr. and Mrs. Warner. Title to the real estate was taken in the names of Charles W. Warner, Jr., Marjorie L. Warner, Willard Sluss and Mary A. Sluss. Over the years funds from the Ohio Fur Company were used to retire a second mortgage on the property in the amount of $15,820.00. Ohio Fur Company monies were also applied to the first mortgage. (The present balance on the first mortgage was not introduced into evidence.) All income generated by the farm property and farm operations was placed in an Ohio Fur Company bank account.

A second property was purchased in July of 1979, and title was taken in the same four names. On this tract of land was a house, which Mr. and Mrs. Sluss were renting as a residence at the time of purchase. Mr. Warner testified that the house was purchased to supply an office for the Ohio Fur Company and that Mr. Sluss was to pay rent to the Ohio Fur Company for the use of the house as a residence. Mr. Sluss testified that he never paid rent for the house to the Ohio Fur Company and denied that he was ever obligated to do so. The down payment of $6,101.35 for the property was made from a bank account of the Ohio Fur Company and mortgage payments were made from the same source.

In January of 1980 a third property was purchased with funds of the Ohio Fur Company and title was again taken in the names of the Slusses and Warners as on the two previous deeds. On this property was a fur shed in which Mr. Sluss conducted business with hunters and trappers.

Sometime after Mr. Knott quit participating in the affairs of the Ohio Fur Company, Mr. Sluss and Mr. Warner agreed to share the profits on a 50–50 basis, although it appears that most of the profits were simply retained by the business. (The exact date that they began to share profits equally is not clear from the testimony.) In addition to land acquisitions, the Ohio Fur

Company also purchased cattle, hogs and grain intending to make a profit.

In March of 1980 an account in the name of the Ohio Fur Company was opened with Merril Lynch in which $40,000.00 was deposited. Although Mr. Warner testified that it was placed in the names of Mr. and Mrs. Sluss and Mr. and Mrs. Warner, he also testified that only he and the Slusses wrote checks on the account, (T.58). Both men testified at various times that there were no profits from the business, but each also testified that the $40,000.00 deposit in the Merril Lynch account was comprised of profits from the Ohio Fur Company. The funds in this account were used to purchase cattle, build fences, construct a shed and barn, and clear off some of the farm land.

Sometime during the 1983–1984 fur season it was determined that the fur company required a large infusion of money to operate. As a result Mr. Sluss and Mr. Warner obtained a bank loan of approximately $108,000.00. Mr. Sluss and Mr. Warner were the only signatories on this unsecured note.

Mr. Sluss testified that approximately $42,000.00 worth of furs were stolen from the company in Montreal, but it is unclear from the testimony when this occurred and whether this was the major cause of the business' financial distress. In any event, it appears that by the middle of 1984 the resources of the Ohio Fur Company had been depleted. It was at this time that Mr. Warner began to make the mortgage payments on the three properties (a total of $25,553.00) from his personal funds as well as to pay the interest payments on the $108,000.00 note (a total of $15,000.00 to $18,000.00).

While Mr. Warner testified that the partnership consisted of himself, his wife, Mr. Sluss and Mrs. Sluss, Mr. Sluss stated that Mrs. Sluss and Mrs. Warner had nothing to do with the business. Mrs. Sluss wrote all of the checks for the Ohio Fur Company between 1976 and 1983. Mr. Sluss explained that she wrote these checks be-

cause he cannot read nor write and has limited mathematical ability.

## CONCLUSIONS OF LAW

It is the position of Charles and Marjorie Warner that a partnership existed between themselves and the debtors and that the three tracts of real estate are assets of the partnership and not of the debtors' bankruptcy estate. The trustee contends that the activities of the Ohio Fur Company constituted a joint venture or a series of joint ventures and, therefore, the debtors have individual interests in the real property which became part of their bankruptcy estate. The debtors also maintain that no partnership existed.

The definition of a partnership under Ohio law is quite simple: "A partnership is an association of two or more persons to carry on as co-owners a business for profit." OHIO REV.CODE § 1775.05(A).

■ The Ohio Supreme Court has defined a joint venture in the following manner:

A joint venture is '* * * an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers * * *.'

*Al Johnson Construction Co. v. Kosydar,* 42 Ohio St.2d 29, 325 N.E.2d 549 (Ohio 1975) (approving paragraph one of the syllabus in *Ford v. McCue,* 163 Ohio St. 498, 127 N.E.2d. 209 (Ohio 1955)).

Although the definitions of partnership and joint adventure share many elements, "the distinction between joint adventure and partnership is that the former relates to a single transaction whereas the latter ordinarily relates to a continuing business." *Ford v. McCue, supra* at 213. (In deciding whether the Ohio Fur Company was a partnership or a joint venture, it is unnecessary in the instant matter to discuss in great detail each and every element of the formation of these business forms. The parties have agreed, at least implicitly, that the business was either a partnership or a joint venture.)

■ Although Mr. Warner's testimony characterized the two agreements of 1976 and 1977 as partnership agreements, they appear to be evidence of a joint venture. No where in the agreements does the word "partnership" appear. While such an omission is not necessarily fatal to the formation of a partnership, the absence of the term is at least some evidence of a lack of intent to form a partnership. In addition there are different signatories to the agreements and the profit arrangements are altered in the second agreement. Again, this is not conclusive evidence against the establishment of a partnership. Of more significance, however, is the fact that the agreements are confined to a single business activity and were for a short duration of six months. The evidence as a whole weighs against the theory that Mr. Sluss and Mr. Warner formed a partnership by virtue of these two written agreements. As of the end of March 1978, the expiration date of the second agreement, Mr. Sluss and Mr. Warner were engaged in nothing more than a joint venture into the fur business.

However, the relationship between Mr. Sluss and Mr. Warner did not remain static. As Mr. Sluss significantly stated in his testimony, "It started out as one thing and changed different times to different things." (T. 18) As the activities of the Ohio Fur Company changed so did its business form.

§ 1775.06 of the Ohio Revised Code provides guidelines for determining whether a partnership exists.[1] We note initially that

---

**1.** § 1775.06 Rules to determine existence of partnership.

In determining whether a partnership exists, these rules apply:

the receipt of a share of profits of a business is prima facie evidence that a person is a partner in the business. OHIO REV. CODE § 1775.06(D). It is undisputed that sometime after March of 1978, Mr. Sluss and Mr. Warner agreed to equally share the profits from the Ohio Fur Company. Although both men stated that there were no profits, both also claimed that the profits were put back in the business. It appears from the figures mentioned on the witness stand that profits were realized and reinvested in the business.[2]

■ While co-ownership of property and the sharing of gross returns do not *per se* establish the existence of a partnership, OHIO REV.CODE § 1775.06(B) and (C), they are of course consistent with the existence of a partnership. It is elemental that partners as co-owners carry on a business for profit. OHIO REV.CODE § 1775.-05(A). Subsequent to March of 1978 the activities of the Ohio Fur Company were expanded. In addition to a continuation of the fur business, Mr. Sluss and Mr. Warner purchased three parcels of land, cattle, hogs and grain. Fences were built, a shed and barn were constructed and land was cleared. All of these activites were financed from Ohio Fur Company funds, which represented income from the enterprise or loans obtained from banks.

These activites composed a continuing business of the Ohio Fur Company, rather than a single transaction, which is indica-tive that the business was a partnership and not a joint venture.

We take judicial notice of the debtors' bankruptcy petition and accompanying bankruptcy schedules. In response to question 2[c] of the statement of financial affairs, the debtors state that there was a *partnership* with Charles Warner and the three parcels of real estate are listed below that statement. In schedule A–3, Charles Warner is listed as a creditor on account of a "claim of *partnership* debts against Willard Sluss and Mary Sluss." And in schedule B–2 the debtors state that "there is a former *partnership* known as Ohio Fur Co." [Emphasis Supplied] While the debtors' use of the legal term "partnership" is not conclusive evidence of the existence of a partnership, it is certainly not inconsistent with a finding of a partnership.

In December of 1977 the trade name of the Ohio Fur Company was registered in the name of Willard Sluss as an individual. Admittedly this act was not consistent with the existence of a partnership, but it should be noted that on that date Mr. Sluss and Mr. Warner were operating under the terms of the second written contract, which we have previously indicated was a joint venture. Still, it cannot be said that all acts of the parties were consistent with those of a partnership. The arrangements between Mr. Sluss and Mr. Warner were informal, and the enterprise appears to have been based largely on friendship.

(A) Except as provided by section 1775.15 of the Revised Code, persons who are not partners as to each other are not partners as to third persons.

(B) Joint tenancy, tenancy with a right of survivorship, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of property.

(C) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the *returns are derived.*

(D) The receipt by a person of a share of the profits of a business is prima-facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(1) *As a debt by installments or otherwise;*
(2) As wages of an employee or rent to a landlord;
(3) As an annuity to a widow or representative of a deceased partner;
(4) As interest on a loan, though the amount of payment vary with the profits of the business;
(5) As the consideration for the sale of good will of a business or other property by installments or otherwise.

2. While the court would like to be more precise in this finding, it is precluded from doing so. The books of the Ohio Fur Company were not introduced into evidence nor was any explanation offered for their absence.

Consequently, matters were not conducted in a strictly business-like fashion. Nevertheless, this court is compelled to force the activities of the Ohio Fur Company into the mold of either a joint venture or a partnership. Given that choice it seems more artificial to label all of the company's activities as a series of joint ventures, rather than to characterize the business as a continuous activity in the form of a partnership. Although the precise date cannot be pinpointed, the evidence establishes that there was a partnership between Willard Sluss and Charles Warner, Jr. sometime after March of 1978 and prior to the purchase of the first parcel of real estate.

■ Although the Warners contend that Mary Sluss was also a member of the partnership, the evidence is insufficient to support such a finding. By the terms of the two written agreements, Mrs. Sluss' function in the Ohio Fur Company was to serve as a bookkeeper. No evidence was introduced to establish that her role with the business was ever altered. That she could write checks on various company accounts is consistent with her tasks as a bookkeeper and does not establish that she was a co-owner of these funds with Mr. Sluss and Mr. Warner. Mr. Sluss testified that his wife assisted him with the books, because he could neither read nor write and she possessed better mathematical abilities than he. Indeed, Mr. Warner also testified that Mrs. Sluss wrote all the checks, because Mr. Sluss has trouble writing. (T. 59) We also note that Mrs. Sluss did not sign the two written agreements concerning the Ohio Fur Company nor did she sign the $108,000.00 note evidencing a loan obtained by Mr. Sluss and Mr. Warner. Again, no evidence has been presented to demonstrate that Mrs. Sluss was a member of the partnership.

Evidence that Marjorie Warner was a member of the partnership is even more tenuous. While Mr. Sluss denied that Mrs. Warner had anything to do with the Ohio Fur Company, Mr. Warner stated the following in response to a question concerning the participation of Mrs. Warner:

"She participated to a much lesser degree, but she was in on the meetings we would have at their house. We openly discussed anything of any importance, at all." (T. 60)

This is the sum total of evidence introduced at trial to establish that Marjorie Warner was a member of the partnership and it is clearly insufficient. There is nothing to support a finding that Mrs. Warner had a role in the partnership.

\*   \*   \*

■ From the above discussion it follows that when the three parcels of real estate were purchased, title vested in the partnership (represented by Mr. Sluss and Mr. Warner), Mrs. Sluss (as an individual) and Mrs. Warner (as an individual). Testimony at trial was unenlightening as to why title was placed in the names of the four individuals, but we find that the interests granted to Mrs. Sluss and Mrs. Warner were legally in the nature of gifts. Therefore, the interest of Mrs. Sluss passed into her bankruptcy estate and the trustee may proceed to sell the entire interest in the three properties subject to the provisions of 11 U.S.C. § 363.

The Warners maintain that they are entitled to an offset against the debtors' interest. While Mr. Sluss' interest is vested in the partnership and subject to the normal provisions of partnership law, the Warners have offered no legal theory or authority for asserting a setoff against the interest of Mrs. Sluss. That interest remains free of any partnership claims.

The parties have agreed that the fair market value of the three tracts of real estate are those set forth in Plaintiff's Exhibit 7. However, the balances of the mortgages on these properties were not introduced into evidence with any degree of precision. Prior to giving final approval to the sale of the properties, the trustee is ORDERED to prepare and file a schedule indicating the various mortgages and liens applicable to each tract of land.

It is also found that in the event of sale, any exemption rights of the debtors are

limited to $5,000.00 for Mary Sluss in her share of the proceeds, which are attributable to the residence only.