**OHIO VALLEY BANK, Appellee,**

v.

**COPLEY et al., Appellees;  Browning et al., Appellants.**

[Cite as *Ohio Valley Bank v. Copley* (1997), 121 Ohio App.3d 197.]

Court of Appeals of Ohio,
Fourth District, Pike County.

No. 96CA582.

Decided June 9, 1997.

*Ed Rhoads,* for appellee Ohio Valley Bank.

*John W. Thatcher,* for appellees Jerry L. and Tabitha Copley.

*James R. Kingsley,* for appellants.

KLINE, Judge.

Cliff and E. Marie Browning appeal the judgment finding them liable to the Ohio Valley Bank ("OVB") and Jerry L. Copley and Tabitha Copley for negligent construction and breach of contract. The Brownings contend that the Pike County Court of Common Pleas erred in finding that Cliff Browning had negligently constructed the structure and that Marie Browning was a joint venturer. We disagree. The Brownings next argue that the trial court erred in finding that OVB could bring suit against them. We disagree. The Brownings contend that a release entered into between OVB and the Copleys also released them. We disagree. The Brownings assert that the trial court erred by admitting into evidence a financial statement of Cliff Browning. We disagree. The Brownings argue that the amount of damages was incorrectly calculated. We disagree. Finally, the Brownings contend that they were owed money for services rendered. We disagree. Accordingly, we affirm the judgment of the trial court.

I

The Copleys entertained bids for the construction of a family residence based on blueprint drawings, specifications, and a materials list obtained from a magazine. The Copleys selected Cliff Browning, who had bid $115,600 for the project. Browning prepared the contract and the parties signed the agreement in October 1992. The contract provided that "all materials will be as stated in spec. sheet or like and kind" and referred to attached sheets. However, no plans or specifications were attached to the contract.

The Copleys sought financing for their new home from OVB. OVB required an appraisal, a copy of the contract, and a materials list. Browning prepared a materials list for OVB which was different from the materials list from the magazine plans. OVB had received a financial statement from Browning earlier in 1992 on another home construction project. The financial statement listed assets of $965,000 jointly owned by Cliff Browning and his wife Marie Browning. Cliff and Marie Browning later testified that the financial statement was inaccu-

rate and that nearly all of the assets listed were actually owned by Marie Browning individually.

OVB approved the Copleys for a $102,400 loan, and the loan documents were signed in November 1992. Construction began shortly thereafter. OVB issued three of the four draws on the loan to the Copleys, who then turned the money over to Cliff Browning. The money was deposited in a bank account for which Marie Browning was the sole authorized signer. Marie Browning then paid bills incurred by Cliff Browning in the construction of the Copleys' home.

Problems arose in February 1993 when the Copleys discovered cracks in the perimeter of the basement wall and had difficulty contacting Cliff Browning. In May 1993, Browning assured the Copleys that he would complete their home in thirty days. The Copleys were skeptical of Browning's assurances and hired several other builders to inspect the structure for defects. The chief area of concern was the footer supporting the basement walls as well as Browning's substitution of materials. On June 24, 1993, the Copleys notified Browning not to return to the site. The Copleys also made no further payments to OVB.

OVB sued the Copleys, seeking to recover the sum provided in construction draws and to foreclose. OVB also sued Cliff Browning on the following theories: (1) OVB was a third-party beneficiary of the Browning–Copley contract, (2) negligent construction, and (3) impairment of collateral. Carter Lumber Company was also named as a party, but all claims by and against Carter Lumber Company were eventually dismissed.

The Copleys then brought suit against Cliff Browning for negligent construction and OVB for failure to inspect. Cliff Browning then counterclaimed against the Copleys and OVB seeking compensation for services performed. Browning also sought punitive damages from the Copleys for damage to his reputation.

The trial court ordered that the property be foreclosed in August 1994. At the foreclosure sale, OVB purchased the property and shortly thereafter sold the property for $60,000. OVB had advanced over $80,000 on the project.

OVB and the Copleys added Marie Browning as a party in 1995, alleging that she was liable as a partner or joint venturer of Cliff Browning. Later, OVB, and the Copleys settled and dismissed all claims against each other.

The court held a trial at which witnesses discussed the footer at length. Testimony revealed that Cliff Browning chose to use a monolithic pour— sometimes referred to as a slab pour—for the basement and footer. A monolithic pour allows a person to pour the basement floor and footer at the same time. The basement wall is then constructed on the floor over the footer area. The trial court found that the standard procedure was to pour the footer separately, erect the walls, and then pour the basement.

Two local general contractors testified that a monolithic pour is inappropriate for a two-story house with a basement such as the one being built for the Copleys. Both contractors testified that they had seen cracks in the Copleys' unfinished home and opined that the structure should be razed due to liability concerns. Civil engineer Loren Pucket testified that a monolithic pour was inappropriate for the Copley project given the soil conditions.

Bruce Davis, the purchaser of the structure from OVB, testified that he finished the house for $47,000 of materials, which translated to costs of $70,000 to $80,000 when his and his partner's labor was considered. Davis stated that he corrected questions about the footer by pouring six inches of concrete in the basement and adding rebars.

The trial court found that (1) Cliff Browning was negligent in the construction of the Copley structure and breached the construction contract; (2) Marie Browning was a joint venturer with Cliff Browning; (3) the specifications and material list referred to in the contract were those from the magazine and not the material list that Cliff Browning submitted to OVB; (4) the Brownings did not establish that the certain substituted materials were adequate to support the structure; (5) the Brownings were paid a total of $86,170: $5,250 by the Copleys and $80,920 in draws; and (6) the value of the improvements the Brownings made to the property was $47,100: the Copleys had paid $12,900 for the land and OVB sold the property after foreclosure for $60,000.

The trial court granted judgment jointly to the Copleys and OVB for $39,070, the difference between the amount expended and the value of the structure. The trial court did not indicate which theory it had used to allow OVB to recover. The trial court also granted judgment in favor of the Copleys for $1,075 for expenses to discover Browning's negligence.

The Brownings now appeal. Cliff Browning asserts the following seven assignments of error:

"I. Did the trial court commit prejudicial error when it granted summary judgment to Ohio Valley Bank upon Cliff Browning's claim as to a third party beneficiary of the loan agreement between Ohio Valley Bank and Copleys?

"II. Did the court commit prejudicial error when it refused to grant Cliff Browning's motion for directed verdict upon the evidence found Ohio Valley Bank was a third party beneficiary of the construction contract between Browning and Copleys?

"III. Were the judgments against Clifford and Marie Browning against the manifest weight of the evidence and/or contrary to law?

"IV. Did the trial court commit prejudicial error when it admitted exhibit 9 and testimony in regard to a false financial statement of Clifford Browning?

"V. Was the judgment against the manifest weight of the evidence when it found Clifford Browning breached the construction contract by negligently constructed [*sic* ] the Copleys' home?

"VI. Did the trial court commit prejudicial error when it did not find the mutual releases of Copleys and Ohio Valley Bank also released Clifford Browning?

"VII. Did the trial court commit prejudicial error in the amount of damages awarded?"

Marie Browning asserts the following assignment of error:

"Did the trial court commit prejudicial error when it found against E. Marie Browning?"

The Brownings' assignments of error raise the following issues: (1) whether the trial court erred in finding that Cliff Browning negligently constructed the structure and that Marie Browning was a joint venturer, (2) whether the trial court erred in allowing OVB to recover, (3) whether the trial court erred by not finding that the release between the Copleys and OVB also released the Brownings, (4) whether the trial court erred by admitting a financial statement of Cliff Browning into evidence, (5) whether the trial court correctly calculated the damages, and (6) whether the trial court erred in finding that Browning could not recover from OVB for services rendered.

## II

We first address the Brownings' two claims that the trial court erred in finding that the structure was negligently constructed and that Marie Browning was a joint venturer. A factual finding of the trial court will be reversed by a reviewing court only if the reviewing court finds that it is against the manifest weight of the evidence. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276. Findings supported by some competent credible evidence will not be reversed as being against the manifest weight of the evidence. *Id.*

## A

The Brownings challenge the trial court's finding that they negligently constructed the structure. In order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. *Menifee v. Ohio Welding Products, Inc.* (1984), 15 Ohio St.3d 75, 77, 15 OBR 179, 180–181, 472 N.E.2d 707, 710. The Brownings owed the Copleys a duty to construct their home in a workmanlike manner. See *Velotta v. Leo Petronzio Landscaping* (1982), 69 Ohio St.2d 376, 23 O.O.3d 346,

433 N.E.2d 147, paragraph one of the syllabus; *Mitchem v. Johnson* (1966), 7 Ohio St.2d 66, 36 O.O.2d 52, 218 N.E.2d 594, syllabus. In order to prove that the Brownings breached their duty, the Copleys had to demonstrate that the Brownings acted unreasonably and did not exercise that degree of care which a member of the construction trade in good standing in similar communities would exercise under the same or similar circumstances. 2 Restatement of Law 2d, Torts (1965) 73, Section 299A. See, also, *Huston v. Konieczny* (1990), 52 Ohio St.3d 214, 217, 556 N.E.2d 505, 508–509.

■ Here, the trial court in essence found that a monolithic pour for a two-story house with a basement was not what a member of the construction trade in good standing in similar communities would have used under the same or similar circumstances. The Brownings argue otherwise and make much of civil engineer Loren Pucket's testimony that the soil contributed to the cracking in the basement. The Brownings assert that soil testing is rarely done on residential building projects and the Copleys should bear the risk of soil conditions. The Brownings therefore contend that the trial court's finding is against the manifest weight of the evidence.

We find that the trial court's finding is supported by competent, credible evidence from Roger Hemming, a general contractor with twenty-six years of experience, and Phillip Stevens, a contractor with twenty-five years of experience. Both men testified that a monolithic pour was inappropriate for a two-story house with a basement. The Brownings are correct that soil conditions factor into a decision regarding the appropriate type of footer. However, testimony at trial indicated that a local builder is expected to have some knowledge of local soil conditions and whether local conditions allow the use of a monolithic pour for a two-story structure with a basement. Therefore, we find that the Brownings' claim is meritless. We overrule part of Cliff Browning's fifth and third assignments of error.

## B

Marie Browning challenges the trial court's finding that she was engaged in a joint venture with Cliff Browning. The Ohio Supreme Court has defined a joint venture as follows:

■ " '[A]n association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each

of the coadventurers[.]' " *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549, paragraph one of the syllabus, quoting *Ford v. McCue* (1955), 163 Ohio St. 498, 56 O.O. 410, 127 N.E.2d 209, paragraph one of the syllabus.

■ When substantial evidence tends to prove the existence of a joint venture, the existence of a joint venture is a question of fact. *Bennett v. Sinclair Refining Co.* (1944), 144 Ohio St. 139, 29 O.O. 223, 57 N.E.2d 776, paragraph four of the syllabus.

■ Here, the trial court found that Marie Browning was a joint venturer with Cliff Browning in the construction of the Copley home. Marie Browning argues that the trial court erred because it relied solely on her status as a wife in finding her a joint venturer. However, we find that the trial court's finding is supported by competent, credible testimony and evidence from Marie and Cliff Browning who testified that Marie (1) opened the business account and was the sole authorized signer for the account, (2) wrote all checks to pay for all workers, subcontractors, and suppliers, (3) deposited money in the account from other sources for the benefit of the construction project, and (4) controlled the business records. Therefore, we find that Marie Browning's claim is meritless. We overrule Marie Browning's assignment of error and part of Cliff Browning's third assignment of error.

## C

■ The Brownings also contest numerous other findings by the trial court which were not central to the judgment. The Brownings argue that the trial court erred in finding that the blueprints, specifications, and materials list from the magazine were incorporated into the contract. However, we find that the trial court's finding is supported by competent, credible testimony from Jerry Copley.

■ The Brownings also assert that the trial court erred in finding that they did not carry their burden to prove that the substituted materials were adequate to support the structure. The Brownings focus on the trial court's statement that no witness could testify that the materials used were not adequate to support the structure. However, the trial court also stated that the materials substituted were structurally inferior. The Brownings had the burden of proof to demonstrate that the materials substituted were adequate, and they presented little more than stray remarks that certain materials may have been adequate. Therefore, we hold that the trial court's finding is not against the manifest weight of the evidence.

The Brownings argue that the trial court erred in finding that there was a material breach of the contract. We disagree because the Brownings' negligent construction was a material breach of the contract. We find that the trial court's finding of breach of contract is supported by competent, credible testimony from contractors Roger Hemming and Phillip Stevens that either the house should be jacked and a new foundation constructed at a cost of $80,000 to $90,000 or the house should be razed. The Brownings' contentions are meritless. We overrule part of Cliff Browning's third and fifth assignments of error.

## III

The Brownings claim that OVB had no cause of action against them and the trial court therefore erred by not dismissing OVB's claims. The trial court did not indicate the theory it utilized to allow OVB to recover. We therefore must determine whether OVB could maintain a suit against the Brownings based on any of the following three theories that OVB pled: (1) OVB was a third-party beneficiary of the Browning–Copley contract, (2) negligent construction, and (3) impairment of collateral.

OVB's third-party-beneficiary theory and other theories of recovery are attempts by OVB to seek recovery for Browning's negligent construction. We will therefore focus on the heart of the action: whether OVB may recover for Browning's negligent construction. As stated previously, in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 15 OBR 179, 472 N.E.2d 707. We must therefore determine whether the Brownings owed a duty to OVB: does a builder owe a construction lender a legal duty to complete the construction of a structure in a workmanlike manner when the builder and construction lender are not in privity of contract? This is an issue of first impression.

"The existence of a duty depends upon the foreseeability of the injury." *Menifee, supra*, 15 Ohio St.3d at 77, 15 OBR at 180, 472 N.E.2d at 710. The test for foreseeability for one undertaking a profession or trade is whether a member of the profession or trade in good standing in similar communities would have anticipated that an injury was likely to result from the performance or nonperformance of an act. 2 Restatement of the Law 2d, Torts (1965) 73, Section 299A. See, also, *Menifee, supra*. OVB argues that a member of the construction trade in good standing would have known that a failure to complete the construction of the structure in a workmanlike manner would foreseeably cause OVB's collateral, *i.e.*, the structure, to be impaired.

■ The Brownings appear to argue that a duty should not be imposed upon them in favor of OVB because OVB did not have a possessory interest in the property when the alleged negligence occurred. However, the Ohio Supreme Court long ago recognized that an action by a mortgagee not in possession of property lies against one who lessens the mortgage security interest. *Allison v. McCune* (1846), 15 Ohio 726, syllabus. See, also, *Toledo v. Brown* (1936), 130 Ohio St. 513, 5 O.O. 168, 200 N.E. 750, paragraph one of the syllabus. In *Allison*, the court's rationale for allowing a suit by the mortgagee was the equitable maxim that "for every injury a remedy is given." The theory of recovery in Allison was labeled as a special action. However, we find that this action sounds in tort because it imposes a duty on parties not in privity of contract with the mortgagee. Therefore, a mortgagee has a sufficient interest in the property to bring suit in tort against a person damaging the property. Here, OVB was a mortgagee of the Copley property.

The Brownings also argue that OVB was not injured by the Brownings' actions because collateral cannot be considered damaged or impaired if it never reached the intended value. The Brownings' concerns are best illustrated by an example: if a structure will have a value of $100,000 if properly constructed, but never in actuality exceeds a value of $60,000, the property never reached its expected value and therefore was not damaged or impaired according to the Brownings. The Brownings focus on the value of the structure as it actually exists, while OVB would focus on the intended structure.

The Brownings knew that OVB had taken a security interest in the Copley structure. Furthermore, a member of the construction trade in good standing would have known that the negligent construction of the structure would cause the structure to be worth less than intended. Therefore, we agree with OVB that the impairment of OVB's collateral was foreseeable if the Brownings failed to complete the structure in a workmanlike manner. We are unconvinced by the Brownings' claim that the collateral was not damaged or impaired. Mortgage financing based on the intended value of the collateral plays a critical role in moving a construction project forward. Furthermore, public policy favors a rule that structures be built in a workmanlike manner and frowns upon a rule that excuses shoddy work.

We are aware that OVB could have received a deficiency judgment from the Copleys after the foreclosure and that the Copleys sued the Brownings for negligent construction. Therefore, OVB did have an alternate remedy. However, we see no reason to force a lender to rely on a string of judgments instead of suing the party responsible for the deficiency.

■ We are concerned by the questions raised by the dissent in *Allison* that one who impairs collateral could be subject to two suits, one by the mortgagee

and one by the mortgagor. *Id.*, 15 Ohio at 734. See, also, *Commercial Credit Co. v. Std. Baking Co.* (1933), 45 Ohio App. 403, 407, 187 N.E. 251, 252–253. We therefore hold that the mortgagor is a necessary party for a suit by a mortgagee against a builder for negligent construction. The inclusion of the mortgagor will ensure that the builder is not subject to two inconsistent judgments.

We find that the Brownings owed OVB a duty to complete the construction of the structure in a workmanlike manner to avoid damaging or impairing the value of OVB's collateral. We have previously determined that the trial court did not err in finding that the Brownings breached their duty to construct in a workmanlike manner. OVB was damaged by this breach. Furthermore, OVB, the Copleys, and the Brownings were parties to the suit. Accordingly, OVB could maintain a suit against the Brownings. The Brownings' claim is without merit. We overrule Cliff Browning's second and part of his third assignment of error.

## IV

The Brownings contend that the mutual release between the Copleys and OVB also released the Brownings. While the Brownings' argument is not entirely clear, they appear to assert that either they and the Copleys or they and OVB were joint tortfeasors and the release of one joint tortfeasor releases or reduces the amount owed by the other. However, the facts do not support the Brownings' claims that Copleys or OVB acted as joint tortfeasors with them. The Brownings negligently constructed the house; the negligent construction was not proximately caused by the acts of OVB and the Copleys. We find that the Brownings' claim is therefore not well taken. We overrule Cliff Browning's sixth assignment of error.

## V

The Brownings challenge the trial court's admission into evidence of a financial statement provided by Cliff Browning to OVB. The financial statement listed Cliff and Marie Browning as having joint assets of $965,000, which both now claim is incorrect because the assets were actually owned by Marie Browning individually. The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1236–1237; *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. Accordingly, the trial court's determination will not be reversed absent a showing of an abuse of that discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17 O.O.3d 98, 100, 407 N.E.2d 490, 493. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 172–173, 404 N.E.2d 144, 148.

■ The Brownings argue that the financial statement was irrelevant to this case because the statement was not presented to OVB in connection with the Copleys' loan. However, we find that the trial court did not abuse its discretion in admitting the financial statement because it is relevant to whether Marie Browning was engaged in a joint venture with Cliff Browning. The Browning's claim is not well taken. We overrule Cliff Browning's fourth assignment of error.

## VI

■ The Brownings contend that the trial court erred in calculating damages. The Brownings first argue that OVB and the Copleys failed to mitigate their damages. The Brownings claim that OVB or the Copleys should have installed spouting to prevent cracking. However, the trial court found that there was no evidence of diminution of value caused by any inaction of OVB or the Copleys. The burden was on the Brownings to demonstrate a failure to mitigate, and we find that the trial court's finding that they failed to carry their burden was not against the manifest weight of the evidence.

■ The Brownings also argue that the court erred by awarding damages in an amount that was greater than the cost of repair of the structure. The Brownings are correct that damages for a breach of a construction contract are generally measured by the reasonable cost of reconstruction. 5 Corbin on Contracts (1964), Section 1089. However, if reconstruction and completion will involve unreasonable economic waste, damages are measured by the difference between the market value that the structure contracted for would have had and that of the imperfect structure received by the plaintiff. *Id.* at Section 1090.

■ Here, widely different opinions were offered regarding whether the structure should be repaired: some suggested razing the structure, while one purchaser was willing to take the risk that the structure could be repaired without totally rebuilding the foundation. Time will tell if the purchaser was correct, and we note that the purchaser still expended a considerable sum. However, we cannot say in the face of this uncertainty regarding the feasibility of repair that the trial court erred in awarding damages as if unreasonable economic waste would occur if the property was repaired. Therefore, we hold that the trial court did not err by calculating damages based on the value of the imperfect structure received by the Copleys and the amount expended by OVB and the Copleys. We note that the Brownings most likely received a bargain by use of this method because the amount expended by OVB and the Copleys was probably less than the market value that the structure contracted for would have had. However, the Copleys did not appeal, and we decline to adjust upward the amount of damages.

The Brownings next argue that the amount of damages was against the manifest weight of the evidence. The trial court granted judgment jointly to the Copleys and OVB for $39,070 and to the Copleys for $1,075. We find that these figures were supported by competent, credible evidence from the Copleys, OVB, and several contractors regarding the value of the structure and the amount expended by OVB and the Copleys.

We find that the Brownings' contentions are not well taken and overrule Cliff Browning's seventh assignment of error.

## VII

The Brownings finally contend that the trial court erred in finding that the Brownings could not recover from OVB for services rendered. The Brownings argued that they should be able to recover from OVB on a third-party-beneficiary theory. However, even if the Brownings were third-party beneficiaries of the loan agreement between OVB and the Copleys, the facts do not support their contention that they are owed money for services rendered. The trial court found that the Brownings were paid a total of $86,170 for services rendered on a structure that the trial court valued at $47,100. Thus the Brownings had no claim for services rendered. Accordingly, we find that their claim is meritless. We overrule Cliff Browning's first assignment of error.

## VIII

In conclusion, we overrule all of the Brownings' assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

STEPHENSON, P.J., concurs as to Parts I, II, IV, V, VI, VII, and VIII, and concurs in judgment only as to Part III.

HARSHA, J., concurs in judgment only.