MAHAN et al., Appellants,

v.

BETHESDA HOSPITAL, INC. et al., Appellees.

[Cite as *Mahan v. Bethesda Hosp., Inc.* (1992), 84 Ohio App.3d 520.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910595.

Decided Dec. 23, 1992.

522

*John H. Metz,* for appellants.

*McIntosh, McIntosh & Knabe* and *Bruce B. McIntosh,* for appellee Bethesda Hospital, Inc.

*Lindhorst & Dreidame* and *Mark A. MacDonald,* for appellee Eugene Elam, M.D.

---

*Per Curiam.*

The plaintiffs-appellants, Samuel E. Mahan III and Kathleen Mahan, appeal from the judgment entered in favor of the defendants-appellees, Bethesda Hospital, Inc. and Eugene Elam, M.D., pursuant to a jury verdict in the trial of their medical negligence action. In their eight assignments of error the plaintiffs contend that the trial court committed errors as follows: (1) in refusing to instruct the jury on *res ipsa loquitur;* (2) in refusing to allow their expert witness, a chiropractor, to render an opinion on causation; (3) in striking the expert testimony of plaintiffs' vocational economic analyst; (4) in rejecting evidence to support their claim for lack of informed consent; (5) in permitting defense counsel's improper and prejudicial comments during closing argument; (6) in refusing to instruct the jury on joint venture; (7) in refusing to allow plaintiffs to present evidence of their medical expenses; and (8) in admitting the "phone log" of Dr. Elam's secretary into evidence. Finding no merit in any of the assignments advanced by the plaintiffs, we affirm the judgment of the trial court.

In September 1981, Samuel Mahan consulted Dr. Eugene Elam, a neurological surgeon, complaining of severe pain in his lower back and right leg. Upon his examination, Dr. Elam's diagnosis was a herniated lumbar disc at L4–5. Dr. Elam performed a helilaminectomy, which is a surgical procedure to relieve pinching or irritation of a nerve. Two months later, Mahan returned to work as a sewer inspector with the Metropolitan Sewer District.

In February 1983, Mahan fell at work. Dr. Elam again examined Mahan. His diagnosis was a recurrent herniated disc at L4–5, which was confirmed by tests. Thereafter, Dr. Elam performed a second helilaminectomy. Approximately two months after his discharge, Mahan was again hospitalized with severe back pain and a resultant diagnosis of interspace staphylococcal infection ("staph") at the site between the discs where Dr. Elam performed the surgery. Although the infection apparently was eliminated by antibiotics, Mahan continued to experience pain and discomfort in the lower portion of his back.

In March 1985, Mahan filed a complaint in the Hamilton County Court of Common Pleas alleging, *inter alia,* that because of the negligence of Dr. Elam

and the hospital in performing the helilaminectomy, Mahan contracted staph infection. His wife's claim was for loss of consortium. The jury returned a verdict in favor of the defendants, and the plaintiffs now appeal.

■ In their first assignment of error, the plaintiffs contend that the trial court erred when it refused to instruct the jury on *res ipsa loquitur.* They acknowledge that they cannot specifically identify the cause or the source of the infection, but argue that an instruction on *res ipsa loquitur* was nonetheless required from the evidence.

■ The doctrine of *res ipsa loquitur* is an evidentiary rule which, when applied to medical claims, permits, but does not require, the jury, absent expert testimony on the appropriate standard of medical care, to draw an inference of negligence from the facts in evidence. *Jennings Buick, Inc. v. Cincinnati* (1980), 63 Ohio St.2d 167, 17 O.O.3d 102, 406 N.E.2d 1385. The applicability of *res ipsa loquitur* cannot be based solely on the premise that treatment was unsuccessful or had a poor result. *Oberlin v. Friedman* (1965), 5 Ohio St.2d 1, 34 O.O.2d 1, 213 N.E.2d 168. In *Morgan v. Children's Hosp.* (1985), 18 Ohio St.3d 185, 187–188, 18 OBR 253, 254, 480 N.E.2d 464, 466, the Ohio Supreme Court held that to warrant an instruction to the jury on *res ipsa loquitur,* a plaintiff must first offer evidence to establish: (1) "that the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed."

The record, including the transcript of the proceedings, demonstrates that the plaintiffs failed, by expert testimony or otherwise, to present evidence that staph infection would not have occurred in the ordinary course of events if reasonable care had been observed by the defendants. To the contrary, the plaintiffs' experts, Dr. Louis Huesman, an orthopedic surgeon, and Dr. Ralph Kelly, an internist and specialist in occupational medicine, were in agreement that despite the highest degree of care exercised by a hospital and its surgical personnel, staph infection can still enter the surgical wound. They also conceded, after reviewing the charts detailing Mahan's surgery, that they were unable to identify an act or omission by Dr. Elam which created a break in the sterile technique and which would have caused the infection. We find that the trial court properly refused the Mahans' request to instruct the jury on the doctrine of *res ipsa loquitur.* The first assignment is, therefore, overruled.

■ In their second and third assignments of error, the plaintiffs challenge rulings made by the trial court regarding the admission of expert testimony.

"Rulings concerning the admissibility of expert testimony are within the discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion." *Frank v. Vulcan Materials Co.* (1988), 55 Ohio App.3d 153, 155, 563 N.E.2d 339, 342. Abuse of discretion implies an attitude by the trial court that is unreasonable, arbitrary, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.* (1990), 50 Ohio St.3d 157, 553 N.E.2d 597.

The plaintiffs contend that the trial court erroneously refused to permit Dr. John Ruch, a chiropractor, to render an opinion as to the cause of Mahan's injury. The trial court permitted Dr. Ruch to testify about Mahan's condition, his prescribed treatment to alleviate the pain, and that Mahan was permanently and totally disabled. The trial court, however, would not permit Dr. Ruch to testify that the post-operative staph infection caused that disability. The trial court did not abuse its discretion when it refused to allow Dr. Ruch to testify as to the cause of Mahan's disability. Not only did he concede his lack of qualifications relative to the diagnosis of staph infection, but as a chiropractor, he was not within the class of persons competent to give expert testimony on the issue of liability for medical negligence as provided by Evid.R. 601(D) and R.C. 2743.43.

■ The plaintiffs next maintain that the trial court erred in striking a portion of the testimony of Dr. Edward Berla, a vocational economic analyst, in which he expressed an opinion that Mahan was one-hundred-percent occupationally disabled. Dr. Berla stated that, in forming his opinion, he reviewed and relied exclusively upon the deposition of Dr. Elam, which was not admitted into evidence at trial.

Evid.R. 703 states that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Since Dr. Berla acknowledged that he did not base his opinion upon the predicates of Evid.R. 703, the trial court properly excluded his opinion regarding Mahan's occupational disability. *Eckert v. Jacobs* (Nov. 25, 1992), Hamilton App. No. C–910445, unreported, 1992 WL 355448. However, after the witness reviewed other exhibits admitted into evidence, the trial court subsequently did allow Dr. Berla to testify that Mahan was "totally occupationally disabled." The plaintiffs' second and third assignments of error are overruled.

■■ In their fourth assignment of error, the plaintiffs challenge the ruling by the trial court sustaining the defendants' objection to a question by plaintiffs' counsel relating to lack of informed consent. The doctrine of informed consent is not merely a theory of negligence; it represents an independent tort claim. *Nickell v. Gonzalez* (1985), 17 Ohio St.3d 136, 139, 17 OBR 281, 283, 477 N.E.2d 1145, 1148. Its source is the proposition that every competent adult patient "has

a right to determine what shall be done with his own body." *Schloendorff v. Society of N.Y. Hosp.* (1914), 211 N.Y. 125, 127, 105 N.E. 92, 93; *Turner v. Children's Hosp., Inc.* (1991), 76 Ohio App.3d 541, 602 N.E.2d 423. The claim of informed consent is established according to the syllabus of *Nickell v. Gonzalez, supra,* when:

"(a) The physician fails to disclose to the patient and discuss the material risks and dangers inherently and potentially involved with respect to the proposed therapy, if any;

"(b) the unrevealed risks and dangers which should have been disclosed by the physician actually materialize and are the proximate cause of the injury to the patient; and

"(c) a reasonable person in the position of the patient would have decided against the therapy had the material risks and dangers inherent and incidental to treatment been disclosed to him or her prior to the therapy."

To what extent a physician must disclose a risk and when that risk is material will require expert evidence concerning what a reasonably prudent physician would disclose. See *Turner v. Children's Hosp., Inc., supra,* 76 Ohio App.3d at 548, 602 N.E.2d at 427.

■ On direct examination, Mahan, the eighth witness called by plaintiffs, was asked by counsel if Dr. Elam informed him of any risks related to his second surgery. Defense counsel's objection was sustained following a bench conference in which plaintiffs' counsel acknowledged that informed consent was not pleaded and defendants' counsel maintained that they were surprised and unprepared to address that claim. At that point, plaintiffs' counsel neither moved to amend the complaint to conform the pleadings to the proof as provided in Civ.R. 15(B) nor proffered the expected answer to the question as required by Evid.R. 103(A)(2). Counsel simply moved on and did not return to the issue of informed consent again.

■ When issues outside the pleadings are not tried by the express or implied consent of the parties, Civ.R. 15(B) states in pertinent part:

"If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Because Civ.R. 15(B) provides that the trial court must grant amendment freely when presentation of the merits will be subserved, the burden is upon the party objecting to satisfy the trial court of the prejudice from admission of the evidence. More than surprise is required because a continuance can protect the party's interest. The objecting party must establish that it will be subjected to a serious disadvantage in presenting its case. *Hall v. Bunn* (1984), 11 Ohio St.3d 118, 11 OBR 417, 464 N.E.2d 516. Absent a showing of abuse of discretion, however, the trial court's decision granting or denying the amendment pursuant to Civ.R. 15(B) will not be disturbed. *State ex rel. Evans v. Bainbridge Trustees* (1983), 5 Ohio St.3d 41, 5 OBR 99, 448 N.E.2d 1159.

The colloquy between the court and counsel for the parties concerning the issue of lack of informed consent occurred near the conclusion of the plaintiffs' case-in-chief and during the fourth day of trial. In reality, plaintiffs' efforts were not merely to conform the pleadings to the proof, but an attempt to introduce an entirely new claim. The record contains less than a modest basis for the trial court's finding of prejudice to the defendants, but because counsel did not move the trial court to conform the pleadings to the proof and because the record is silent as to what the evidence would be, plaintiffs have failed to provide us with a record to demonstrate to our satisfaction that the trial court abused its discretion. The fourth assignment of error is overruled.

In their fifth assignment of error, the plaintiffs allege that the trial court erred when it permitted defense counsel's improper comments to the jury during closing argument. Specifically, the plaintiffs take issue with statements made by defense counsel that challenged the veracity of Mahan and Dr. Kelly and that described Dr. Elam as the victim in the case.

Generally, counsel is afforded broad latitude in closing argument. *Cusumano v. Pepsi Cola Bottling Co.* (1967), 9 Ohio App.2d 105, 38 O.O.2d 132, 223 N.E.2d 477. "Remarks that are not supported or warranted by the evidence and which are calculated to arouse passion or prejudice or are designed to misrepresent the evidence to the extent that there is a substantial likelihood that the jury may be misled may constitute prejudicial error." *Jackson v. Booth Mem. Hosp.* (1988), 47 Ohio App.3d 176, 180, 547 N.E.2d 1203, 1207. However, inferences drawn from the evidence in the case are a legitimate subject of argument. *Id.* The determination of whether alleged misconduct of counsel is sufficient to taint the verdict with passion or prejudice ordinarily lies within the sound discretion of the trial court, *Lance v. Leohr* (1983), 9 Ohio App.3d 297, 298, 9 OBR 544, 545, 459 N.E.2d 1315, 1316, and "[b]efore a reviewing court will disturb the exercise of the trial court's discretion, the record must clearly demonstrate highly improper argument by counsel which tends to inflame the jury." *Id.*

In the case *sub judice,* defense counsel did not state that the expert witnesses, most notably, Dr. Kelly, were dishonest or untruthful, but instead merely argued that based on their testimony during the trial, their opinions regarding Mahan's condition were incredible and should be given no weight by the jury. However, defense counsel did state that Dr. Elam was a victim in this case because he had been forced to defend against the plaintiffs' unsubstantiated claims for six years.

While the comments by defense counsel were not helpful to the jury in assessing the evidence or in resolving the issues raised in the case, the record does not demonstrate, even inferentially, that they inflamed the jury. The trial court, therefore, did not abuse its discretion when it permitted defense counsel to make the statements at issue. The fifth assignment of error is overruled.

In their sixth assignment of error, the plaintiffs contend that the trial court erred when it refused to instruct the jury on joint venture.

A joint venture arises from a contractual association of parties with the common purpose of carrying out a single business venture for their mutual profit, for which they combine their efforts, property, money, skill and knowledge without creating a partnership or a corporation. *Al Johnson Constr. Co. v. Kosydar* (1975), 42 Ohio St.2d 29, 71 O.O.2d 16, 325 N.E.2d 549. Other factors that must be present include " 'a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise; expectation of profits * * *; a right to participate * * * [therein]; and, usually, a limitation of the objective to a single undertaking * * *.' " *Kahle v. Turner* (1979), 66 Ohio App.2d 49, 52, 20 O.O.3d 111, 113, 420 N.E.2d 127, 130.

The plaintiffs have failed to present any authority to support their position or to direct our attention to specific evidence adduced at trial that would warrant an instruction to the jury on joint venture. In conducting our own review, we find the record silent as to whether the defendants shared in profits, losses or control of an enterprise, or whether they agreed, either expressly or impliedly, to enter into a joint venture. We hold, therefore, that the trial court correctly refused to instruct the jury on the issue.

In their seventh assignment of error, the plaintiffs contend that the trial court erred when it refused to permit them to introduce evidence of certain medical expenses incurred as a result of Mahan's injury. This assignment is overruled because even if we assume, *arguendo,* that the trial court incorrectly excluded the evidence concerning Mahan's medical expenses, it is manifest from the jury's verdict on the issue of liability and our ruling on the other assignments that this assignment of error is made moot. App.R. 12(A)(1)(c).

In their final assignment of error, the plaintiffs argue that the trial court erred in admitting the "phone log" of Dr. Elam's secretary since it constituted impermissible hearsay.

"Hearsay" is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 803(6) provides that a record of a regularly conducted business activity is an exception to the hearsay rule. Dr. Elam testified that the authenticated phone log was a record maintained by his secretary in the ordinary course of his business as a neurosurgeon, and that it was kept under his care, custody and control. The trial court properly admitted the phone log as a business record under Evid.R. 803(6). Plaintiffs' eighth assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

SHANNON, P.J., HILDEBRANDT and GORMAN, JJ., concur.