[Cite as *Grimes v. Grimes*, 2012-Ohio-3562.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY


LEWIS F. GRIMES, EXECUTOR OF    :
THE ESTATE OF JOHN H. GRIMES,
SR.,    :

     Plaintiff-Appellee,      :    Case No.   10CA23

     vs.      :

JOHN H. GRIMES, JR.,      DECISION AND JUDGMENT ENTRY

     Defendant-Appellant.      :

_____

APPEARANCES:

COUNSEL FOR APPELLANT:    Sky Pettey, Lavelle and Associates, 449 East State Street, Athens, Ohio 45701

COUNSEL FOR APPELLEE:    James S. Huggins, and Daniel P. Corcoran, Theisen Brock, L.P.A., 424 Second Street, Marietta, Ohio 45750

CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-2-2012
ABELE, P.J.

{¶ 1}   This is an appeal from a Washington County Common Pleas Court, Probate Division, judgment in favor of Lewis F. Grimes, Executor of the Estate of John H. Grimes, Sr., plaintiff below and appellee herein, on claims he brought against his brother, John H. Grimes, Jr., defendant below and appellant herein.

{¶ 2}   Appellant assigns the following errors for review:[1]

---

[1]  Appellant did not include in his brief a separate statement of assignments of error.   See App.R. 16(A)(3).   We therefore take the assignments of error from page *i* of the brief's Table of Contents.

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED AS A MATTER OF LAW AND
ABUSED ITS DISCRETION WHEN IT ALLOWED
APPELLEES [sic] TO AMEND THE COMPLAINT TO ADD
CLAIMS FOR FORGERY, FRAUD, AND TO INCLUDE TWO
ADDITIONAL DEEDS AFTER THE TRIAL WAS OVER AND
AFTER REPEATEDLY REFUSING TO ALLOW THE
PLAINTIFF TO SO AMEND THE COMPLAINT PRIOR TO
AND DURING THE TRIAL, GIVEN THAT THERE WAS NO
EXPRESS OR IMPLIED CONSENT TO TRY THOSE ISSUES."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S JUDGMENT ON THE UNDUE
INFLUENCE CLAIM WAS AGAINST THE MANIFEST
WEIGHT OF THE EVIDENCE."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED AS A MATTER OF LAW,
ABUSED ITS DISCRETION, AND/OR MADE A DECISION
THAT WAS AGAINST THE MANIFEST WEIGHT OF THE
EVIDENCE WHEN IT FOUND THAT A CONFIDENTIAL
RELATIONSHIP EXISTED BETWEEN JOHN GRIMES, JR.
AND JOHN GRIMES, SR. AND THAT AS A RESULT THE
BURDEN OF PROOF SHIFTED TO JOHN GRIMES JR."

FOURTH ASSIGNMENT OF ERROR:

"THE TRIAL COURT'S DECISION THAT THE DEEDS WERE
VOID FOR LACK OF DELIVERY WAS AGAINST THE
MANIFEST WEIGHT OF THE EVIDENCE AND WAS AN
ABUSE OF DISCRETION."

{¶ 3}   John H. Grimes, Sr. (the decedent) died testate on December 17, 2002.   Prior to

the decedent's death, appellant facilitated the transfer of several real estate parcels from the

decedent (appellant's father) to himself.   The decedent's Last Will and Testament named his

sons, the parties herein, as legatees of his estate, but designated appellee as recipient of several

parcels of real estate (which are the subject of this litigation), as well as naming him estate executor.

{¶ 4}   Appellee commenced the instant action on June 26, 2006 and requested that various real estate transfers to his brother be set aside.   Appellant did not answer, but, rather, challenged the trial court's jurisdiction to hear the case.   The trial court ruled on November 9, 2006 that the Common Pleas Court acquired jurisdiction by virtue of an action filed in the court and, thus, dismissed the complaint.   We, however, reversed that ruling.   See Grimes v. Grimes, 173 Ohio App.3d 537, 879 N.E.2d 247, 2007-Ohio-5653 (Grimes I).

{¶ 5}   On remand, appellant answered and denied the allegations, and later requested summary judgment.   The trial court granted the motion on August 26, 2008 and dismissed the complaint.   We, however, reversed that judgment.   See Grimes v. Grimes, Washington App. No. No. 08CA35, 2009-Ohio-3126 (Grimes II).

{¶ 6}   Several months after the remand, appellee filed a motion to amend the original complaint and sought the set-aside of yet another inter vivos transfer of property interest and to add additional counts, or theories of recovery.   On August 19, 2009, the trial court denied that motion on grounds that appellee should have proposed the amendments much earlier.   The case proceeded to a bench trial over two days in December 2009.

{¶ 7}   At trial, Richard Yoss, the decedent's attorney, testified that he drafted the decedent's will.   That document provided for appellee to be the legatee of a number of the decedent's properties.   As to why a majority of those properties were to be left to the appellee instead of his brother, Yoss related that father and son were close and the decedent "thought very

highly" of appellee.   As to why the decedent did not disinherit appellant entirely, Yoss explained his client thought appellant an "S.O.B." but he was also "his S.O.B."

{¶ 8}   Karen Amos, one of the decedent's end of life caretakers, also related how the decedent had told her that his wife had left most of her property to appellant rather than the appellee, and   he made the disposition to try and even things out.[2]

{¶ 9}   The evidence adduced also revealed that on October 13, 2002, approximately two months prior to the decedent's death, the decedent purportedly executed a number of deeds to transfer to appellant properties that his will had directed to be left to appellee.   On the date of the decedent's death, those deeds were filed for record.


{¶ 10}  Appellee and his cousin, Gary Riggs, both testified that the signature on several of the deeds did not match the decedent's signature.   Further, several of the decedent's neighbors testified that shortly before his death, they mentioned to him   that they wanted to purchase some of his land, but the decedent told them to talk to appellee because he was the future owner.

{¶ 11} Appellant was highly uncooperative when called on cross examination. Appellant failed to bring the originals of the deeds that he was subpoenaed to bring, and either refused to answer, or could not remember, many of the questions put to him.

{¶ 12}     During his own case, however, appellant denied that he exerted undue influence on his father.   He testified that his father asked him to prepare the deeds, rather than have

---

[2]   Ruth Grimes, the decedent's wife, apparently died in 2000.     The record indicates, that even before her death, an intra-family litigation occurred over ownership rights to family property.     Moreover, a number of witnesses testified that appellant was closer to his mother (Ruth), whereas appellee was closer to his father (the decedent).

his attorney do so, in order to save money.   No explanation was advanced as to why the decedent might have changed his mind, so near to his death, as to the disposition of the subject properties.   Earlier in the case, however, when asked if he believed that his father's will made "a fair and equal division of property between [him] and [his] brother," appellant replied in the negative.

{¶ 13} Although the transcript is not entirely clear on this point, it appears that appellee renewed his motion to amend the complaint at the outset of trial and the court denied it once again.   It is also clear that at the conclusion of trial, appellee moved to amend the pleadings to conform to the evidence adduced at trial.   The trial court denied that motion as well.

{¶ 14} The trial court filed a detailed and lengthy judgment on July 21, 2010.   The court found in favor of the appellee and ordered that the subject deeds be set aside.[3]   Procedurally, the trial court changed its position on its prior denial of appellee's motions to amend the pleadings. The court reasoned that two additional property transfers, above and beyond those originally specified in the original complaint, were the subject of evidence introduced at trial.   More important, the trial court ordered the pleadings amended to reflect the additional theories of forgery and fraud with respect to the inter vivos property transfers.

{¶ 15} Substantively, the trial court found, by clear and convincing evidence, that six of the subject deeds did not bear the decedent's actual signature and must be set-aside. Furthermore, the court reasoned that even if appellant's signature was not forged, the property transfers should nevertheless be set-aside due to (1) fraud in factum (given the relationship

---

[3] The court filed two subsequent (amended) judgments after the original, but for the sake of simplicity we take our information from the "second amended decision and entry on complaint for declaratory relief" filed July 26, 2010.

between decedent and appellant), and (2) undue influence.   The trial court also found no delivery

of the deeds and, hence, no mutual intent to pass title to those properties to appellant.

Consequently, the court declared the transfers of those properties to be void and ordered the

deeds filed in Washington County, Ohio, and Ritchie County, West Virginia, to be set aside.

This appeal followed.[4]

I

{¶ 16} Appellant asserts in his first assignment of error that the trial court erred by

permitting the amendment of pleadings to conform to the evidence.   We disagree.[5]

---

[4] We note at the outset that, although the argument portion of appellant's brief has separate sub-parts, it still sets forth a single argument (in its entirety) in support of all assignments of error.   This is improper.   App.R. 16(A)(7) requires a separate argument "with respect to each assignment of error presented for review[.]" Though appellate courts have the option to address two or more assignments of error at once, the parties do not. See Powell v. Vanlandingham, Washington App. No. 10CA24, 2011—Ohio— 3208, at ¶ 24; Keffer v. Cent. Mut. Ins. Co., Vinton App. No. 06CA652, 2007—Ohio—3984, at ¶ 8, fn. 2. Parties must comply with the Ohio Rules of Appellate Procedure. If not, App.R. 12(A)(2) permits us to disregard those assignments of error that are not separately argued.   Though App.R. 12(A)(2) permits us to simply disregard all of appellant's assignments of error, the interests of justice compel us to consider them on their merits anyhow.

[5] Before we consider the assignments of error on their merits, we first address our various standards of review on appeal.   Throughout his assignments of errors appellant interchangeably asserts that the trial court either erred as a matter of law, abused its discretion or made findings against the manifest weight of evidence.   However, these standards of review are neither synonymous nor interchangeable.

Arguments that a trial court erred as a "matter of law" typically involve decisions on legal issues that require a *de novo* standard of review. See e.g. Wells Fargo Bank v. Schwartz, Cuyahoga App. No. 96641, 2012-Ohio-917 at ¶2; League of United Latin Am. Citizens v. Kasich, Franklin App. No. 10AP—639, 2012-Ohio-947, at ¶26.   If applying a *de novo* standard of review, an appellate court affords no deference whatsoever to the trial court and will use its own judgment to determine whether the trial court erred.   When an appellate court reviews for an "abuse of discretion," the court must afford much more latitude to a trial court.   An abuse of discretion requires more than a mere mistake of law. See Stammco, L.L.C. v. United Tel. Co. of Ohio, 125 Ohio St.3d 91, 926 N.E.2d 292, 2010-Ohio- 1042, at ¶32; also see State v. Daft (Dec. 30, 1994), Vinton App. No. 94CA493.
Thus, much more deference is accorded to a trial court decision under the abuse of discretion than under the *de novo* standard of review.   In considering whether a trier of fact's findings are supported by the manifest weight of the evidence, a somewhat different standard is applied.   This standard is also highly deferential and an appellate court will uphold a trier of fact's decision if it is supported by even some competent and credible evidence.   See Barkley v. Barkley (1997), 119 Ohio

{¶ 17} It is well-settled that decisions that involve an amendment of pleadings lies within the sound discretion of the trial court, and such decision will not be reversed absent an abuse of discretion. Dillon v. Ferris (Jun. 11, 1996), Lawrence App. No. No. 95CA25; Coburn v. Grimshaw (Jun. 27, 1995), Scioto App. No. 94CA2278. Generally, an abuse of discretion is more than an error of law or judgment; rather, it implies that a court's attitude is unreasonable, arbitrary or unconscionable. State v. Herring (2002), 94 Ohio St.3d 246, 255, 762 N.E.2d 940; State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. When conducting a review under the abuse of discretion standard, appellate courts must not substitute their own judgment for that of the trial court. State ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728, 732, 654 N.E.2d 1254; In re Jane Doe 1 (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181.

{¶ 18} Appellant's argument relies, in part, on the trial court's prior decisions to overrule appellee's various motions to amend the pleadings. We, however, do not find any particular significance in those decisions because, as appellee correctly notes in his brief, those rulings were interlocutory and could be modified any time prior to the entry of a final order. See Dickess v. Stephens, Lawrence App. No. 08CA38, 2010-Ohio-32, at ¶5, fn. 4; Redmond v. Big Sandy Furniture, Inc., Lawrence App. No. 09CA13, 2009-Ohio-6824, at ¶45. Here, the trial court may have decided, upon further reflection after the trial's conclusion, that sufficient evidence was indeed presented to warrant such an amendment. This is within the trial court's discretion and

App.3d 155, 159, 694 N.E.2d 989; Mann v. Mann, Athens App. No. 09CA38, 2011-Ohio-1646, at ¶13. Thus, these concepts are not interchangeable and different issues will involve the use of different standards of review.

we are not inclined to reverse that ruling absent a showing of prejudice.

{¶ 19} Moreover, Civ.R. 15(B) expressly allows for amendment of the pleadings to conform to evidence presented at trial "at any time, even after judgment." This Court and others have long encouraged such amendments to be freely allowed. Keller v. Russell (June 9, 2000) Scioto App. No. 99CA2659. See e.g. Coburn, supra; Mahan v. Bethesda Hosp., Inc. (1992), 84 Ohio App.3d 520, 527, 617 N.E.2d 714; State Savings & Loan v. Parker (Jul. 13, 1984), Lake App. No. 10-010. This is also in keeping with the Ohio Supreme Court's admonition that when possible, cases should be decided on their merits. State ex rel. Montgomery v. R & D Chem. Co. (1995), 72 Ohio St.3d 202, 204, 648 N.E.2d 821; Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, 454 N.E.2d 951.

{¶ 20} To establish an abuse of discretion concerning a Civ.R. 15(B) amendment of the pleadings to conform to the evidence, the appellant must demonstrate more than surprise. Mahan, supra at 527; Source Technology, Inc. v. Turmatic Systems, Inc., Cuyahoga App. No. 82276, 2003-Ohio-4350, at ¶35. Instead, the appellant must establish actual prejudice. See Fogelman v. Stoyer, Franklin App. No. 11AP–281, 2011-Ohio-5887, at ¶30; Cobblestone Square II Co., Ltd. v. L & B Food Servs., Inc., Cuyahoga App. No. 95968, 2011-Ohio-4817, at ¶35.

{¶ 21} In the case sub judice, most of the appellant's argument is that neither fraud nor forgery was tried with the "implied consent" of either party for purposes of Civ.R. 15(B). We, however, disagree. The forgery issue arose in the trial court proceedings during appellee's testimony:

"Q. And you've looked at all these deeds, right?

A. Yes.

Q. And you're pretty familiar with your dad's handwriting?

A. Yes.  Do you think his signature is on those deeds"

A. July 13th is his signature, and you'll never convince me that the rest of them are.

Q. You don't think that's your dad's signature on any of those deeds?

A. Only on July 13th."

Thus, if appellee is asked whether his father's signature actually appears on the deeds that he purportedly executed, the issue of forgery has been raised.  No objection was raised with respect to that testimony that the subject was beyond the scope of the pleadings.  Indeed, on cross-examination appellee was questioned again by his brother's counsel:

"Q * * * [I]s it your contention now still, that the deeds that are the exhibits that are a part of this lawsuit, that the signatures on there are forged?

A. They're not my dad's.

Q. They're not your dad's signature?

A. Only the July 13th, is the only one still say is dad's signature."

Again, the issue was raised on direct examination, and cross examination.  Forgery was also raised when Gary Riggs was asked on direct examination whether he recognized his uncle's signature on the deeds.  Again, no objection was lodged with respect to his testimony on grounds that it was beyond the scope of the pleadings.  In view of the foregoing, we conclude that the forgery issue was indeed tried with the consent of the parties.

{¶ 22} Insofar as prejudice is concerned, appellant contends that he was prejudiced because his brother did not bring to trial the handwriting expert that he "improperly used estate funds to hire[.]"  We, however, fail to see how this prejudices appellant's case as appellant could

have subpoenaed the witness. Moreover, although the trial court sustained an objection to the question, appellant's counsel asked appellee if it was not true the handwriting expert "didn't have an opinion that it was a forgery." The absence of an opinion on this issue is not synonymous with a conclusion that the signature was that of appellant.[6]

{¶ 23} In addition, other witnesses testified that they had also contacted the decedent shortly before his death to inquire about purchasing some land, but the decedent instructed them to talk to the appellee because he would eventually own the land. Although this evidence does not directly involve the issue of forged signatures, it does suggest that the decedent did not transfer the property to appellant in the first place and, thus, the signatures on the various deeds were forged. Once again, no objection was made concerning this testimony. Also, appellant did not request a continuance to produce witnesses on this point, including an expert witness, concerning the origin of the signatures on the deeds.

{¶ 24} For all of these reasons, we do not believe that appellant established he was prejudiced by allowing amendment of the pleadings to conform to the evidence. Accordingly, we do not believe that the trial court abused its discretion and we hereby overrule appellant's first assignment of error.

II

{¶ 25} We jointly consider appellant's three remaining assignments of error. After concluding that the decedent's signature was forged on six deeds, the trial court considered

---

[6] Appellant also cites part of the second transcript volume for the proposition that he was not permitted to produce a handwriting expert. This citation is confusing at best (citing the volume in descending order – e.g. "II. 21-14") and, in any event, we find nothing in the record to substantiate appellant's claims.

appellee's alternate arguments. The court found, inter alia, that appellant had a "confidential relationship" with his father, thus giving rise to a presumption of undue influence that appellant did not rebut. Even without such a "confidential relationship," the trial court ruled that the evidence established that appellant exercised undue influence over his dying father. All that aside, the court further ruled that appellant and his father never "manifested to anyone an intention to pass title [to these properties] at any time before John Sr.'s death."

{¶ 26} Appellant argues in his second, third and fourth assignments of error that the trial court's findings on these alternative theories of recovery are against the manifest weight of the evidence. However, because these theories of recovery are alternative theories of recovery, we need not address them if sufficient evidence exists to support the trial court's forgery finding.

{¶ 27} Our analysis begins with the basic proposition that the trial court's factual finding will be upheld if supported by some competent and credible evidence. Shemo v. Mayfield Hts. (2000), 88 Ohio St.3d 7, 10, 722 N.E.2d 1018; C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, at the syllabus. This standard of review is highly deferential and even "some" evidence is sufficient to support a court's judgment and to prevent a reversal. See Barkley; Jones v. Smith Transport, Hocking App. No. 11CA11, 2012-Ohio-692, at ¶14; Powell v. Vanlandingham, Washington App. No. 10CA24, 2011–Ohio–3208, at ¶26.

{¶ 28} In the case sub judice, the trial was to the court, not to a jury. Therefore, the trial court judge served as the trier of fact. Weight and credibility of the evidence are issues that the trier of fact must determine. State v. Frazier, 115 Ohio St.3d 139, 873 N.E.2d 1263, 2007–Ohio–5048, at ¶106; State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763. The trier if fact is in the best position to weigh witness credibility because it may view the witnesses,

observe their demeanor, gestures and voice inflections.   <u>Myers v. Garson</u> (1993), 66 Ohio St.3d

610, 615, 614 N.E.2d 742; <u>Seasons Coal Co. v. Cleveland</u> (1984), 10 Ohio St.3d 77, 80, 461

N.E.2d 1273.   Consequently, a trier of fact may choose to believe all, part or none of the

testimony of any witness who appears before it.   See <u>State v. Colquitt</u>, 188 Ohio App.3d 509,

936 N.E.2d 76, 2010–Ohio–2210, at ¶10, fn. 1; <u>State v. Nichols</u> (1993), 85 Ohio App.3d 65, 76,

619 N.E.2d 80.

**{¶ 29}** In the case at bar, the trial court expressly opined that it found "Johnny's

[appellant's] credibility is lacking for a variety of reasons."[7]   Appellant was the only witness

called in his case-in-chief, it does not bode well when the trier of fact finds your sole witness not

credible.

**{¶ 30}** As mentioned above, appellee and his cousin, Gary Riggs, both testified that the

signatures on the subject deeds did not belong to the decedent.[8]   Richard Yoss, the decedent's

attorney, stated that he prepared appellant's will in 2000 and encouraged him to simply make an

*inter vivos* transfer of the property that appellee would eventually receive through testamentary

bequest.   On December 2, 2002, nearly two months after deeds were executed to purportedly

convey those same properties to appellant, Mr. Yoss's office received a phone call to prepare the

deeds that would transfer the properties to the appellee.   Appellee testified that he made the

---

[7] The trial court devoted nearly two pages of its decision and judgment to explain why it found appellant to be untrustworthy.    The issue of appellant's credibility was probably not helped when his insurance agent, Thomas Perrine, testified that appellant contacted him the Monday prior to the trial to make sure that Perrine would not offer "any personal information" on him at trial.

[8] Even though the trial court did question appellant's credibility, the court did emphasize that appellee "acted honorably by not executing gift deeds from his father to" himself, even though a power of attorney previously given to him by his father ostensibly authorized him to do so.

phone call, but did so at his father's behest.   This is obviously inconsistent with the fact that the decedent had already transferred these properties to his other son.   As to why the decedent did not disinherit appellant entirely, Mr. Yoss recalled his client telling him one day "Johnny is an SOB but he's my SOB."

**{¶ 31}** Although it is clear from the brothers' testimony that their   relationship is strained, abundant testimony indicated that the decedent was closer to appellee than appellant, thus making it less likely that the decedent would have transferred the disputed properties to appellant.   Once again, Richard Yoss testified that appellant and the decedent were not "in agreement" on things.   Dennis Burga, a neighbor of the decedent, testified that appellee and the decedent were "like best friends," whereas his relationship with appellant was "[n]ot good, it wasn't that great."   Stanley Vollmar, another neighbor, related that appellee was closer to his father than his brother.   Donna Slonaker, one of decedent's caretakers during the last few months of his life, testified that despite being in the decedent's home, she met appellant one time and that was the day he took his father to notarize the deeds.[9]

**{¶ 32}** Several witnesses also testified that on the day that the decedent purportedly executed the deeds, the decedent did not mention the transaction, although he did relate how appellant took him for a ride that day to see friends and to buy apples.   The decedent, however, did not mention that he signed any deeds or met with the notary.

**{¶ 33}** As for the deeds themselves, the trial court aptly noted that only the decedent and

---

[9]   Appellee also testified that appellant scared his father.    The gist of appellee's testimony is that in the final few weeks of his father's life, appellant "just badgered him" about a number of things, including the transfer of property that would have been included in the estate.

the appellant witnessed their execution.   The notary, Joseph Hupp, testified at trial to the effect

that he did not recall the events of the day that he notarized the deeds because too many years had

elapsed.   Even in his 2006 deposition, Hupp had little recollection of the deeds he notarized.

Hupp did testify, however, that he met appellant and decedent in a Wal-mart parking lot on the

date the deeds were notarized.   The witness related:

> A.   "I'm asking him I guess as the notary is that his signature, and he was to the
> best of my recollection nodding his head in the affirmative.   I don't know that he
> ever said – verbally said anything or verbally said yes, but obviously gave me
> assurance that this was his signature.
> * * *
> A.   I left.   It was a, you know, in-and-out deal as I assumed it would be.   And I
> thought I was doing a favor for a friend of grandad and tax client and I'm
> mistaken." (Emphasis added.)

{¶ 34} Dennis Burga and Stanley Vollmar, both neighbors of the decedent, testified that

shortly before his death they each mentioned that they were interested in buying his land, land

that was later included in the deeds in question.   The, decedent, however, referred them to the

appellee who he said would inherit that land.   Once again, this does not appear to be the action

of a man who, several months earlier, conveyed the subject properties to another son.

{¶ 35} In light of this evidence, we believe that the manifest weight of the evidence

supports the trial court's conclusion that the subject deeds were indeed forged.   Consequently,

we may affirm the trial court's decision and judgment irrespective of the other theories for

recovery that appellee advanced.

{¶ 36} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's

assignment of error and affirm the trial court's judgment.   Furthermore, appellant's second, third

and fourth assignments of error have been rendered moot and will be disregarded.   See App.R.

12(A)(1)(c).[10]

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Probate Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J. & McFarland, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele

Presiding Judge

---

[10] In Grimes II, supra at ¶28, we indicated that appellee's *arguments* were moot and declined to address them pursuant to App.R. 12(A)(1)(c).    However, by its terms App.R. 12(A)(1) (c) applies only to assignments of error rather than arguments asserted thereunder. See e.g. Robinson v. Spurlock, Jackson App. No. 11CA4, 2012-Ohio-1510, at ¶26, State v. Baker, Holmes App. No. 11CA16, 2012-Ohio-853, at ¶53. Appeals are determined, after all, on the basis of the assignments of errors themselves rather than arguments in support of assignments of error.    See App.R.12(A)(1)(b).

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.