[Cite as *Moore v. Kubota Tractor*, 2013-Ohio-226.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY


WILL K. MOORE,                                    :

    Plaintiff-Appellant,                    :       Case No.   12CA7

    vs.                                             :

KUBOTA TRACTOR                                   :    DECISION AND JUDGMENT ENTRY
  CORPORATION, et al.,


    Defendants-Appellees.
_____

APPEARANCES:

APPELLANT PRO SE: Will K. Moore, 13239 Middlefork Road, Amanda, Ohio 43102

COUNSEL FOR APPELLEE        Paul F. Price, Price & Rosenberger, 112        ALLPOWER
EQUIPMENT:     West Third Street, P.O. Box 26, Waverly,                        Ohio
45690

COUNSEL FOR APPELLEE        James P. Botti and Elizabeth L. Moyo,        KUBOTA
TRACTOR           Porter Wright Morris & Arthur LLP,          CORPORATION:        41
South High Street, Suite 3100,                           Columbus,   Ohio 43215
_____
CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 1-23–13
ABELE, J.

    **{¶ 1}**   This is an appeal from a Circleville Municipal Court judgment in favor of Kubota

Tractor Corporation, Hill Implement,[1] and Allpower Equipment,[2] defendants below and appellees

herein.   The trial court determined that Will K. Moore, plaintiff below and appellant herein, failed to

---

[1] Hill Implement did not enter an appearance in this appeal.

[2] Allpower's name is spelled "AllPower" in the transcript, but we use the spelling that appears in the trial court's
judgment entry.

establish that he suffered any damages as a result of Hill Implement's negligence.

{¶ 2}   Appellant assigns the following error for review:

"THE TRIAL COURT'S FINDING IN THIS CASE UNDER
NEGLIGENT REPAIR WAS THAT BY A PREPONDERANCE OF
THE EVIDENCE, HILL IMPLEMENT NEGLIGENTLY FAILED TO
REFILL THE TRANSMISSION AT THE 50-HOUR SERVICE, AND
OTHER CAUSES WERE EXCLUDED.   THE TRIAL COURT'S
ADDITIONAL FINDING THAT NO INJURY OR DAMAGE
OCCURRED IS CONTRARY TO THE MANIFEST WEIGHT OF
THE EVIDENCE AND ERRONEOUS."

{¶ 3}   On January 11, 2012, appellant filed a small claims complaint against appellees for "money due me for damaging/repairing new vehicle."   Appellant alleged that appellees improperly serviced his Kubota RTV 500 utility vehicle and caused it to sustain damage.

{¶ 4}   At the hearing, appellant stated that approximately six months after he purchased the vehicle, he took the vehicle to Hill Implement for the manufacturer's recommended 50-hour service.  After that service, he continued to operate the vehicle on a daily basis without incident.

{¶ 5}   After five months, appellant took the vehicle to Allpower for the manufacturer's recommended 100-hour service.   Before doing so, appellant checked the transmission fluid and noted that it seemed low.   The Allpower mechanic later discovered that the vehicle contained eight-tenths of a quart of transmission fluid, when its capacity was over eight quarts.   Allpower checked the transmission for damage, but found none.

{¶ 6}   Gary Carver, a licensed aircraft and engine mechanic (and one of appellant's relatives), testified that running the vehicle without transmission fluid "would cause damage to the transmission."   The court asked Carver whether he had "anyway [sic] of predicting what the long term damage could be if any?   Anyway [sic] of predicting with any degree of accuracy?"   Carver

responded: "Really no.  No.  All I could predict [is] that it did not improve the condition of the equipment and I think that would be obvious to anyone."  The court asked Carver whether he believed that appellant's vehicle suffered damage as a result of the lack of transmission fluid and Carver stated that he "cannot say."

{¶ 7}  Jim Carroll, a Kubota service representative, stated that if appellant's vehicle left Allpower with eight-tenths of a quart of transmission fluid in it, "it wouldn't have lasted a week," yet appellant continued to operate it for approximately five months and none of the subsequent tests uncovered any defects with the vehicle.  Carroll testified that the transmission fluid "disappeared[,] however it disappeared[,] very late in this time period and * * * there is no significant damage to the machine because of that."  Carroll further explained:

> "* * * [I]f the transmission starts suffering damage, it generates debris early in this process and you can pick it up pretty rapidly.  If the transmission is damaged even slightly, it shows up in the testing * * * .  We have not had a report that there's a problem with the machine since the 100 hour service was done.  We feel confident that it left AllPower 100% complete, operating normally with no damage.  That, you know, would be the reason why I said that the phantom oil occurred very late in this time period because if it had been that way when it left Hill Implement there would have been catastrophic damage to the transmission.  If it had run for that period [of] time with that amount of oil in it there's no way it would have survived even a brief period of time."

{¶ 8}  On April 3, 2012, the trial court entered judgment in appellees' favor.  The court found that Hill "negligently failed to refill the transmission at the 50-hour service," but determined that appellant failed to prove that he suffered any harm as a result of Hill's negligence.  The court stated: "Absolutely no evidence was presented that the tractor does not presently perform properly."  The court additionally determined that appellant did not prove damages.  The court observed that appellant requested "the value of a new transmission or in the alternative an extended

warranty."   The court found that appellant is not entitled to a new transmission because he did not establish that the current one suffered any measurable damage.   The court explained:   "The time for transmission failure in the future is purely speculative.   The testimony that the transmission 'might' fail sooner than it should does not meet the legal standard that it 'probably' will."   The court found that because appellant brought the action in small claims court, it was unable to award appellant the equitable/specific remedy of extending the manufacturer's warranty.   This appeal followed.

{¶ 9}   In his sole assignment of error, appellant asserts that the trial court's finding that he did not prove damages is against the manifest weight of the evidence.   Appellant basically contends that because all of the witnesses agreed that the vehicle should have been either non-operational or damaged as a result of being operated for five months with eight-tenths of a quart of transmission fluid in it, then the vehicle must have been damaged.   Appellant asserts that "it is not logical to think that you can operate this vehicle for approximately five months on one[-]fourth or less of the amount of transmission fluid the vehicle requires without diminishing the life of the transmission."   He claims that Kubota's owner manual demonstrates that failing to operate the vehicle with the proper amount of transmission fluid "greatly affects" the life of the vehicle.

{¶ 10}  Within this assignment of error, appellant also appears to assert that the trial court erroneously determined that Hill was not Kubota's agent for liability purposes.

A

STANDARD OF REVIEW

{¶ 11}  Generally, we will not reverse a judgment as against the manifest weight of the

evidence as long as some competent and credible evidence supports it.   E.g., Shemo v. Mayfield

Hts., 88 Ohio St.3d 7, 10, 722 N.E.2d 1018 (2000); C.E. Morris Co. v. Foley Construction Co., 54

Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.   "This standard of review is highly deferential

and even 'some' evidence is sufficient to sustain the judgment and prevent a reversal."   Barkley v.

Barkley, 119 Ohio App.3d 155, 159, 694 N.E.2d 989 (1997); e.g. Grimes v. Grimes, — Ohio St.3d

—, 2012-Ohio-3562, 975 N.E.2d 496, (4th Dist.), ¶27.

{¶ 12}  Moreover, "an appellate court should not substitute its judgment for that of the trial

court when there exists * * * competent and credible evidence supporting the findings of fact and

conclusions of law * * *."   Seasons Coal Co. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273

(1984).   Issues relating to the credibility of witnesses and the weight to be given the evidence are

primarily for the trier of fact.   As the court explained in Seasons Coal Co.:

> "The underlying rationale of giving deference to the findings of the trial
> court rests with the knowledge that the trial judge is best able to view the witnesses
> and observe their demeanor, gestures and voice inflections, and use these
> observations in weighing the credibility of the proffered testimony."

Id.

B

NEGLIGENT REPAIR

{¶ 13}  "'As a general rule, one who contracts to repair or service an automobile is liable

for any damage proximately resulting from the negligent or unskillful manner in which he makes

the repairs or performs the services.'"   Landon v. Lee Motors, Inc., 161 Ohio St. 82, 101, 118

N.E.2d 147, 158 (1954), quoting 24 American Jurisprudence 491, Section 24.   Thus, a successful

negligent repair action, like any negligence action, requires a plaintiff to establish that: (1) the

defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) the defendant's breach of duty directly and proximately caused the complained-of injury.   E.g., Texler v. D.O. Summers Cleaners (1998), 81 Ohio St.3d 677, 680, 693 N.E.2d 271; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142, 539 N.E.2d 614; Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75, 77, 472 N.E.2d 707.

C

DAMAGES

{¶ 14}  A plaintiff is not entitled to recovery under a negligence theory simply because the plaintiff proves that a defendant breached a duty.   A plaintiff must further show that a defendant's breach of duty proximately caused the plaintiff a demonstrable injury and damages.   See Columbus Fin. Inc. v. Howard (1975), 42 Ohio St.2d 178, 184, 327 N.E.2d 654 (explaining that in a tort action a plaintiff must ordinarily "prove * * * that he suffered a particular type of injury * * * [and] the pecuniary value thereof").   "Our legal system does not and cannot recognize actions for unsustained [or] conceptual * * * damage."   Chance v. BP Chemicals, Inc., 8th Dist. Nos. 66622, 66645, and 67369, 1995 WL 143827 (Mar. 30, 1995), affirmed 77 Ohio St.3d 17, 670 N.E.2d 985 (1996).   Thus, "[i]n order to recover damages, the injury and resulting damage must be shown with certainty and not be left to conjecture and speculation."   Zeiger v. Shons, 8th Dist. Nos. 78150 and 78218, 2001 WL 470175, (May 3, 2001); e.g., Atelier Dist., L.L.C. v. Parking Co. of Am., Inc., 10th Dist. No. 07AP–87, 2007–Ohio–7138, ¶60, citing Allied Erecting & Dismantling Co., Inc. v. Youngstown, 151 Ohio App.3d 16, 2002–Ohio–5179, 783 N.E.2d 523, ¶64.   Consequently, a court ordinarily cannot award a monetary judgment for theoretical injuries or damages.

{¶ 15}  In the case sub judice, the trial court's finding that appellant failed to establish that

he suffered a demonstrable or quantifiable injury is not against the manifest weight of the evidence. Rather, competent and credible evidence supports the trial court's finding. None of the witnesses who actually examined the vehicle detected any discernible damage to the transmission or to the vehicle. Moreover, each witness who examined the vehicle stated that the vehicle operated as intended. While all of the witnesses admitted that, in theory, the transmission should have been damaged after appellant drove it for five months with less than one quart of transmission fluid, not one witness could point to any concrete evidence that showed appellant's vehicle suffered demonstrable damage. Thus, while they all agreed that the vehicle theoretically should have suffered damage, not one could find any evidence that the vehicle in fact suffered damage.

{¶ 16} Appellant claims that the court's decision that the vehicle did not suffer damage "is a mechanical impossibility given the trial court's finding of Hill Implement's negligence * * *. It defies a basic mechanical fact. Metal on metal without sufficient lubrication causes damage * * *. This is further highlighted by all the testimonial evidence given by the witnesses and the manufacturer's own manual." Appellant bases his argument upon the witnesses who stated that the vehicle should have suffered damages if it had been operated for five months without transmission fluid. These witnesses stated, in essence, that if appellant operated the vehicle for five months without transmission fluid, the vehicle would not have functioned properly for five months.[3] Appellant asserts that the implication of the testimony is that the vehicle must have

---

[3] Appellant asserts that the following testimony shows that his vehicle suffered damage.

Appellant observes that Wycoff testified that he discovered metal chips when he drained the transmission fluid from the vehicle. Appellant does not, however, explain how the discovery of metal chips meant that the transmission was damaged. Appellant fails to acknowledge that Wycoff explained that the metal chips were most likely the shavings that resulted when Wycoff cut open the filters.

Jim Carroll testified: "Based on my experience if the machine had left the dealership [with] eight tenths of a quart of

suffered damage.    The facts presented at trial, however, defy appellant's implication.    Appellant

---

oil, it wouldn't have lasted a week, with the use that's been described.    It's unreasonable to expect that it would have run five months and then test normally.    And all of the tests that we ran indicated that there was nothing wrong with this machine."

Appellant stated: "After a few days had passed and not hearing from Hill Implement, I contacted the company again and spoke to Tom Hill.    Mr. Hill responded I don't believe it.    Why is this the first time I'm hearing about this?    I don't believe the vehicle would still be running after 50 hours."

The judge questioned a witness: "Okay so [what] you're basically saying is that if it left the shop with as little transmission fluid as it had at the 100 hour check that you don't believe it would have run almost 50 hours without significant damage."    The witness responded: "I don't see how it could have."

The judge questioned a witness: "I understand your belief is that it shouldn't probably, that there should be significant problems now if that were the case."    The witness stated: "Yea, something like that should have just ruined (inaudible) right off the bat."

Appellant asked Wyckoff if he "remember[ed] making a statement that if you had been driving it the vehicle would have locked up."    Wycoff stated: "If it was my unit yea, I remember that.    Cause if there was no fluid in it, but the other thing that would have saved me was I do a periodic check on my equipment every time I get on something I always check the fluids in it."

The judge asked Chris Speakman what damage, if any, the transmission would have suffered if it had been operated for five months with eight-tenths of a quart of fluid in it.    Speakman responded: "The clutches in it won't be running.    Won't be getting no oil [sic] to it.    It won't move."    The judge then inquired: "So getting past the fact that you agree that it would not, it shouldn't be moving at all, let's assume that we don't know what happened, which is pretty accurate in this case, and it's moving.    Is there anyway to predict whether that transmission under those circumstances if it's moving and passing Mr. Wycoff's tests, if it's going to last a week, a month, a year or forever?"    Speakman stated: "It shouldn't last that long."

Appellant asked Carver, his witness, to "explain what effect utilizing the transmission for five months with less than a quart of transmission fluid would have to that transmission?"    Carver stated: "* * * * The purpose of lubrication obviously is to lubricate, clean and cool the machinery.    I guess the question to me is if you ran with almost no lubrication what would the affect [sic] be?    If it's going to improve it, keep it the same or is it going to damage it in some degree in a future time and in my opinion it would cause damage to the transmission.    I don't know of any other way to see it."

Carver later stated that "[a]nytime you run anything with low on lubrication it causes adverse affects. [sic]" Appellant asked him if his testimony was "that would cause it to wear faster once it's damaged and that would damage it."    Carver stated: "It doesn't do it any good and it doesn't make [it] stay the same.    So the only other alternative is to damage.    I can't answer that any other way.    You can't run something low on lubrication and expect it to be, especially for four or five months and say well it's going to be the same.    Otherwise it would have never had eight quarts or whatever it is, recommended to start with."    Appellant asked Carver "if the transmission was ran [sic] as AllPower testified that they found point nine quarts of fluid remaining in that vehicle that was ran [sic] for five months under those conditions, would that cause damage to the transmission?"    Carver stated: "In my opinion yes."    Carver also explained that once a transmission is damaged, "potentially wear can accelerate so what time frame it would take to cause some wear after that wear has occurred the next amount of wear of the same amount might be half as long in time.    So it accelerates very rapidly."

surmises that the transmission must have been damaged because the witnesses stated that it should have been damaged.   Appellant's theory is, unfortunately, speculation.   He cannot point to any fact in the record to show that his vehicle suffered actual, as opposed to theoretical, demonstrable damage.   Appellant guesses that it was damaged because it was not operated in accordance with the manufacturer's recommendations.   Appellant has not, however, presented any affirmative evidence to show that the vehicle was demonstrably damaged.   Simply because a vehicle is not operated in accordance with a manufacturer's recommendations does not necessarily lead to the conclusion that the vehicle is damaged.   It is certainly, however, a possibility, but not a certainty. The facts in the case at bar demonstrate that while it was possible for appellant's vehicle to become damaged if he failed to operate it pursuant to the manufacturer's recommendations, his vehicle did not, in fact, suffer damage.   While appellant and Carver think that it did, neither could point to any concrete evidence to show that the vehicle suffered demonstrable damage.

{¶ 17} Moreover, even if some evidence supports appellant's theory, the trial court is entitled to disbelieve appellant's claims that the vehicle suffered damage.   A trial court's judgment is not against the manifest weight of the evidence when the fact-finder chooses to believe one set of facts over another.   See State v. Cooper, 170 Ohio App.3d 418, 2007–Ohio–1186, 867 N.E.2d 493, ¶17, quoting State v. Mason, 9th Dist. No. 21397, 2003–Ohio–5785, ¶17, quoting State v. Gilliam, 9th Dist. No. 97CA6757, 1998 WL 487085, (Aug. 12, 1998) ("'"When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony."'").   In the case sub judice, we cannot state that the court's decision to disbelieve appellant's damage testimony is against the manifest weight of the evidence, especially when appellant failed to present any concrete evidence that the vehicle

suffered demonstrable damage.

**{¶ 18}** Because appellant failed to prove damages, he cannot demonstrate all the elements of his negligence claim.   Without a negligence claim, there is no liability.   Thus, we see no reason to consider appellant's agency argument, i.e., whether Kubota could be liable under an agency theory.

**{¶ 19}** Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Circleveille Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Kline, J.: Concur in Judgment & Opinion

For the Court

BY:_____<br>Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.